No. 18,895.

KEITH MILLER *v*. PEOPLE OF THE STATE OF COLORADO.
(349 P. [2d] 685)

Decided February 16, 1960.   Rehearing denied March 14, 1960.

Mr. E. F. CONLY, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GERALD HARRISON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in error Miller herein referred to as defendant or by name, and a co-defendant (Taylor) were convicted of murder in the first degree and sentenced to life imprisonment.

Miller and Taylor were charged with the murder of one George Mashburn, allegedly committed at about 3 P.M. on December 20, 1957, during the holdup of a Tavern in Denver. The co-defendant (Taylor) has not sought review of his conviction.

It is admitted that the crime was committed by two masked men, one a small white man, the other a tall colored man. Defendant's counsel in his brief states: "The actual shooting was done by the smaller man during the course of a scuffle with the deceased and the deceased was again shot after he had fallen to the floor. After the shooting the various persons present in the tavern were herded to the 'Cooler' in the back of the establishment, except for Loyas Harril Dean, the owner of the tavern who was removed from the Cooler and forced to deliver money to the criminals and then was returned to the Cooler."

It is undisputed that the deceased came to his death as the result of two twenty-five caliber bullets fired from a pistol in the hand of the white man.

Defendant seeks reversal on the following grounds: That the trial court erred in admitting in evidence certain exhibits obtained "as a result of illegal search and seizure"; in admitting other irrelevant exhibits, and in refusing to direct a verdict of not guilty as to defendant.

Co-defendant (Taylor) was identified as the tall colored man and Miller as the small white man who participated in the crime.

The chief dispute here and at the trial centers upon the identification of Miller by the bartender Dean. Counsel for defendant in his brief frankly states: "Obviously, if the testimony of Loyas Dean [the bartender] were believed it would constitute such direct, complete and damning evidence, as to have required no further testimony at the trial from any witness, and *a fortiori,* to require no further discussion here. However, it is submitted that viewing such testimony in the most favorable light possible it would not only *not* be believed,

but is, in fact, completely unbelievable as contrary to all human experience and conduct, and therefore violative of the rules of logic upon which the law must sustain itself." This witness testified that he had known Miller for some six years; had seen him on numberless occasions and that he recognized Miller as the man who did the shooting. It is here contended that the testimony of this witness was unworthy of belief. Any inconsistency goes merely to the credibility of this witness and in connection with other evidence in the case was a matter solely for determination by the jury. 58 A.J. p. 490, §862; 23 C.J.S. p. 176, §1174-1175.

Complaint is made of the testimony of a pawnbroker showing defendant Miller owned a twenty-five caliber revolver a few months prior to the homicide. We find the objection without merit.

Here testimony was introduced that defendant had owned a twenty-five caliber pistol (a rather uncommon weapon) which had been pawned and redeemed by him on two occasions, and the undisputed fact that deceased was killed by two twenty-five caliber bullets, which eye-witnesses testified were fired by the white holdup who used a small revolver capable of fitting in the palm of the hand. The admission of this testimony rested in the sound discretion of the trial court and we find no prejudicial error in its admission. In *State v. Nichols,* 179 Minn. 301, 229 N.W. 99, the court said: "The crime charged that defendant aided by two others and being armed with a loaded revolver, robbed one Ernest H. Porter * * * on October 3, 1928. The state, over objections by defendant, was permitted to show that on two other occasions in November 1927 and July 1928, at places distant from Minneapolis, the defendant had in his possession a revolver similar to the one claimed to have been used at the time of the robbery. * * * The defendant contends this evidence was too remote. As to its being remote, the trial court had discretion to receive

or not receive this evidence and did not abuse its discretion."

■ Another witness who knew defendant testified that at about 3:15 P.M. on the day of the homicide he saw defendant come down the alley and run into the garage in the rear of the house where defendant lived and where the officers later found a pair of blue tennis shoes. Objection was made to the admission in evidence of the blue tennis shoes so found. At least one witness testified that the small white man was wearing a pair of blue tennis shoes at the time of the holdup.

In *People v. Allen,* 17 Ill. (2d) 55, 160 N.E. (2d) 818 there was evidence that a person committing a burglary wore gloves. Later some gloves were found in a field into which the defendant was seen running. The court there held that the gloves were sufficiently connected with the crime to be admissible.

■ With reference to the assignment that the trial court erred in not directing a verdict in favor of defendant, we need only refer to the statement above quoted from the brief filed by counsel for defendant in which it is conceded that the identification of Miller was the only questionable link in the chain of evidence necessary to sustain a conviction. He then argues that we should substitute our opinion and conclusions for that of the jury in determining whether the identifying witness testified falsely, which, of course, we cannot do.

■ The burden rests on defendant to establish that evidence allegedly improperly admitted was prejudicial to his rights. *St. Louis v. People,* 120 Colo. 345, 209 P. (2d) 538. See, also, *Kallnbach v. People,* 125 Colo. 144, 242 P. (2d) 222. Here counsel has shown no prejudice, for he frankly admits that the identification of defendant by the Witness Dean, if believed by the jury, was ample to sustain a verdict of guilty.

The co-defendant, Taylor, was arrested approximately four hours after the robbery at which time a blackjack was found in his possession. This was offered and re-

ceived in evidence over the objection that it was not shown to have been used or exhibited in the holdup, and had no connection with the crime committed. While this exhibit might well have been excluded, we think no prejudice resulted to defendant from its admission.

Several witnesses testified that the tall colored man who participated in the robbery wore a parka and a mask when the crime was committed. A parka with a mask in the pocket thereof was found in a shed at the rear of Taylor's residence. There was testimony by witnesses that the parka offered in evidence "looked like" that worn by the tall colored man who participated in the holdup, and that a hammer used during the perpetration of the crime was left at the scene; that during the robbery the hood on Taylor's parka fell, exposing his face, and he was recognized by witnesses who identified him at the trial as the man who carried what appeared to be the barrel of a sawed-off shotgun partially covered by his parka at the time of the commission of the crime. Less than eight hours later the barrel portion of a sawed-off shotgun was found in Taylor's residence. These identifying witnesses testified that the barrel of a sawed-off shotgun offered in evidence resembled the one carried by the tall colored man at the time of the holdup. The exhibit was sufficiently identified to be admissible as evidence. The probative value thereof and its connection with the crime was a matter to be resolved by the jury. *Commonwealth v. Barclay,* 178 Pa. St. 568, 115 A. (2d) 405.

In *Lipscomb v. State,* 162 Neb. 417, 76 N.W. (2d) 399 it was held that where defendant was arrested in an automobile a few blocks from the scene of the robbery it was not error to admit in evidence, in a subsequent prosecution, a gas pipe two feet in length, with one end taped so as to make a handle, even though such instrument was not shown to have been used in perpetration of the robbery. As has been shown, two persons acted in concert in the commission of the crime charged, each

being equally responsible for the consequences. The possession of the blackjack, generally known to be one of the working tools in common use by the holdup profession, was a circumstance the jury could consider in connection with the other evidence in the case, and the fact that it was found in the possession of Taylor can avail this defendant nothing, for Taylor does not complain, and by instruction No. 11 the trial court properly instructed the jury as to the limited purpose for which such evidence was received and for which it might be considered by the jury. *Donald Richard Davis v. People of the State of Colorado,* 137 Colo. 113, 321 P. (2d) 1103; *Baca v. People,* 139 Colo. 111, 336 P. (2d) 712.

We are prone to believe that if Taylor, at the time of his arrest, had been found in possession of a prayerbook, or other evidence of piety, his counsel would have zealously sought its admission to prove, or attempt to prove, the religious character of his client.

Exhibits identified as AA (shotgun barrel), BB (blackjack), CC (parka) and DD (Mask) were found either on Taylor or in or near his residence. Defendant contends that these were not admissible because they were obtained without a search warrant. This was the sole objection raised at the trial. It is contended that they were improperly admitted as against Miller.

Defendant's counsel admits that evidence produced as a result of an illegal search and seizure is admissible in this jurisdiction. *Wolf v. People,* 117 Colo. 279, 187 P. (2d) 926 affirmed 338 U.S. 25. The same rule was announced in *Wolf v. People,* 117 Colo. 321, 187 P. (2d) 928. He urges us to overrule *Wolf v. People,* which we decline to do.

As to the second ground on which objection is made it must be remembered that defendant and his codefendant jointly participated in the criminal venture which resulted in the homicide. They acted in concert in furtherance of a common illegal purpose, and each, as to the other, was an accomplice. Hence, admitting in evi-

dence as against defendant, the articles found in the possession of his co-defendant, was not error where they were a part of the People's case against both defendants. *Kolkman v. People,* 89 Colo. 8, 300 Pac. 575; *People v. Turville,* 51 Cal. (2d) 620, 335 P. (2d) 678; *State v. Brewton,* Ore. (1959), 344 P. (2d) 744.

Upon the record here made we find no error in the receipt of these exhibits as evidence.

After the verdict was received this defendant and his co-defendant complained of their assigned counsel and asserted that they had not been adequately represented and requested the assignment of other counsel. Counsel later withdrew, apparently being satisfied with the verdict and understandingly not willing to accept the unjust criticism heaped on them by defendants. A careful reading of the record, together with what this court must note from long experience and contact with these eminent lawyers who represented the defendants, it must be said that they represented the defendants with skill and diligence and did all that could be done to present to the jury in as favorable light as possible the salient facts surrounding the brutal homicide.

The learned and experienced trial judge exhibited commendable restraint in commenting on the criticism directed by Miller and Taylor to their counsel. Among other things, he stated: "It seems to me both defendants want to try the lawyers. You (Defendants) were tried and convicted. Now, you want to try the lawyers. That is probably your theory of the case, that you have to have the lawyers tried. The fact of the matter is the jury tried you and you have been convicted, and ably defended, in the Court's opinion, if I have ever seen an ably defended case and diligence." A careful reading of this record amply justifies this statement concerning the diligence and skill shown by these competent and able lawyers who painstakingly and conscientiously represented the defendants in this murder case.

584

Perceiving no prejudicial error in the record, the judgment is affirmed.