No. 20,002.

THE PEOPLE OF THE STATE OF COLORADO *v.*
JOSEPH E. SPINUZZI, ETC.
(369 P. [2d] 427)

Decided March 5, 1962.

392

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. MATT J. KIKEL, District Attorney, Mr. R. ALLAN GLOVER, Deputy District Attorney, Tenth Judicial District, for Plaintiff in error.

No appearance for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

IN the trial court the defendant in error was charged

with the murder of James D. Scott. He pleaded not guilty to the charge and thereafter filed a motion for release on bail, contending that the proof was not evident nor the presumption great of his guilt of the crime charged. After hearing, the motion to set bail was granted and the defendant was released on bail.

On the day set for trial the defendant appeared and requested a continuance, contending that his counsel had been unable to talk to the witnesses because the District Attorney had instructed them to talk to no one about the case. The District Attorney stated that he had not ordered the witnesses not to talk to defense counsel but that he had told them that they did not have to discuss the case with anyone if they did not want to do so. The trial judge thereupon stated that he could not make the witnesses talk if they did not wish to do so but that he would not permit them to testify unless they did talk to the defense counsel. The District Attorney objected to this statement of the trial judge. At any rate, the witnesses did testify at the trial.

The pertinent evidence at the trial revealed the following: The deceased was a musician employed at the Five Queens Club in Pueblo, Colorado. On the night of September 15, 1960, some of his friends came to his place of employment and an argument began between the friends of the deceased and a bartender at the club over 25¢ which the deceased's friends had put in the juke box. The deceased became involved in the argument. Thereafter the deceased and his friends were pushed from the club by one Ricci and one Parlato who was the manager of the club. Outside the club, Ricci and Parlato on the one hand and the deceased on the other hand engaged in a fight. They were separated by one Watson and the fight terminated.

At this time, the defendant Spinuzzi, who had been sitting in the club with Ricci and Parlato earlier in the evening, came upon the scene outside the club. Using vile language, he ordered decedent's friends from the prem-

ises and threatened to "blow their brains out." The deceased's friends left and Spinuzzi then proceeded toward the decedent, exchanged words with him, held a pistol about two feet from his head and then hit and viciously kicked him. Spinuzzi and the deceased wrestled toward the back of a station wagon parked in the area. At this point the decedent fell backward with his head back and his hand in front of his face. Spinuzzi was on top of him as he was falling. A shot was heard. Spinuzzi arose from the body of the deceased with a gun in his hand, put the gun in his belt and walked away. The decedent lay on the ground mortally wounded.

The autopsy revealed a bullet hole in the palm of the hand of the deceased and another in the left nostril with the bullet lodged in the brain. There were powder burns on the deceased's hand where the bullet had gone through. The bullet traveled in an upward direction from its entrance in the deceased's hand to its final resting place in his brain.

At the close of the People's evidence the defendant moved for a directed verdict of acquittal and the motion was granted as to first and second degree murder, leaving voluntary manslaughter and involuntary manslaughter in the case.

Thereupon, the defendant rested without offering any evidence and again moved for a directed verdict as to the remaining counts of voluntary and involuntary manslaughter. The court granted the motion with respect to the remaining charges and directed a verdict of not guilty on all issues.

The People assign error to the action of the trial court in directing a verdict of not guilty and are here by virtue of C.R.S. '53, 39-7-27, which permits writs of error on behalf of the people to review decisions of the trial court upon questions of law arising in any criminal case. The defendant does not appear here. In addition, the People contend that as a matter of law the court also erred in the following particulars:

1. It admitted the defendant to bail.

2. It ordered the People's witnesses to discuss their testimony with defense counsel under the penalty of not being permitted to testify if they did not do so.

3. It limited the purpose for which a photograph of the deceased could be considered by the jury to that of identity of the deceased.

4. It refused to permit a witness to identify the defendant because the identification was not positive.

We direct our attention first to the trial court's action in directing the jury to find the defendant not guilty on all issues. As one of the reasons for granting the motions, the trial court stated that the only connection between the defendant and the death of the deceased was that the defendant was seen getting up off the deceased with a gun in his hand after a shot was fired. The testimony of an eye witness that the defendant approached the deceased with a gun in his hand pointed at the deceased and that shortly before the deceased fell backwards the defendant held his gun as close as two feet from the deceased's head, was not considered by the trial court. There was testimony that as the deceased was falling with the defendant falling on top of him, the deceased held his hand in front of his face. It is significant that there was only one shot and that the bullet which lodged in the deceased's brain and caused his death first passed through the palm of his hand and in an upward direction toward the brain. There were powder burns on the deceased's hand where the bullet entered.

It is true that no one saw the defendant pull the trigger, and no one saw the path of the bullet as it left the gun. But such precision of testimony is not necessary to connect a defendant with a shooting in this state. *Ives v. People*, 86 Colo. 141, 278 Pac. 792; *Covington v. People*, 36 Colo. 183, 85 Pac. 832. As the evidence stood at the close of the People's case, the defendant was the only person in the area with a gun. He threatened the

deceased's friends with this gun and then proceeded toward the deceased and pointed the gun at him. An altercation ensued, a shot was heard and the defendant. arose from the body with a gun in his hand. The powder burns on the deceased's hand indicated that the shot was fired at close range. That the defendant had the gun in his hand both before and after the shot was fired; had threatened deceased and others, are compelling circumstances, clearly presenting a question of fact for the jury to determine, not only as to whether the defendant fired the fatal shot, but whether the circumstances were such as to constitute murder in any degree.

The court, in granting the motion for directed verdict, further found that there was no evidence of premeditation or malice, express or implied. In arriving at this conclusion the court referred to the fact that there was no acquaintanceship between the defendant and the deceased and no evidence of animosity one way or the other between the defendant and the deceased. It is true that the state must prove malice, express or implied, before a charge of murder may be sustained, but malice· is not synonymous with motive. Proof of motive is not an essential part of the state's case in a murder prosecution. *Keady v. People,* 32 Colo. 57, 74 Pac. 892. .

Malice, as it applies to the crime of murder, is not necessarily ill will, malevolence or hatred. 1 Wharton's *Criminal Law and Procedure,* 524, §142. Were this not so a hired killer could rarely be convicted of murder, for in most cases he bears no ill will, malevolence or hatred toward his victim nor is he acquainted with him.

Malice exists where there is a deliberate and formed design to take a human life (express malice), or if no such deliberation and formed design is present where there is no considerable provocation for the killing, or where the circumstances show an abandoned or malignant heart (implied malice·). C.R.S. '53, 40-2-2, 40-2-3. The deliberation and formed design need not have existed

at the inception of the transaction which finally resulted in the homicide. It matters not how short the interval between the formation of the design and the death if it included the time necessary for one thought to follow another. *Maestas v. People,* 91 Colo. 36, 11 P. (2d) 227. The evidence established that the defendant approached the deceased, brandishing a gun; that he had threatened deceased's friends; that an altercation occurred and that the deceased fell back with defendant on top of him; that a shot was heard and that the defendant arose and put the pistol in his belt. From this evidence the jury could have found that Spinuzzi had formed a premeditated design to take the life of Scott or that there was no considerable provocation for the killing.

 Under the circumstances, it was not for the court to determine as a matter of law, but for the jury under proper instructions to resolve as a matter of fact, the question of whether premeditation and malice, express or implied, existed. *McAndrews v. People,* 71 Colo. 542, 208 Pac. 486. The motion to direct a verdict on all issues should have been denied and the issue concerning guilt or innocence of the defendant on the charge submitted to the jury.

The People assign as error the trial court's action admitting the defendant to bail pending the trial. Article II, Sec. 19 of the Colorado Constitution provides:

"All persons shall be bailable by sufficient sureties except for capital offenses, when the proof is evident or the presumption great."

The constitutional provision has been interpreted by this Court to mean that bail may be permitted in a capital case where the court finds that the proof is not evident or the presumption of the defendant's guilt great, and that it is the duty of the court to determine for itself these matters in each case. *In Re Losasso,* 15 Colo. 163, 24 Pac. 1080.

 The purpose of confining the defendant before trial is not for punishment but to insure his presence

at the trial. The historical reason for denying bail in a capital case is because temptation for the defendant to leave the jurisdiction of the court and thus avoid trial is particularly great in such case. Courts should therefore proceed with extreme caution in permitting bail in a capital case and in the determination of whether the proof is evident or the presumption great.

■ We would next deal with the admonition made by the trial judge that the witnesses would not be permitted to testify in the case unless they discussed the testimony with defense counsel. Apparently such discussion took place because the witnesses did testify; hence there was no prejudice to the People. We point out, however, that there is no authority, either by statute or common law, to exclude the testimony of a witness for the People because he refuses to discuss his testimony with defense counsel.

■ During the People's case the District Attorney offered a photograph of the deceased for two purposes: (1) to establish identity, and (2) to show the bullet hole in the palm of the hand and in the skull and to illustrate the path which the bullet took. The court restricted the use of the photograph to the question of identity. This was also error. It has been consistently held in this jurisdiction that photographs are competent evidence of anything which it is competent for a witness to describe in words. They are not inadmissible merely because they bring vividly to the jurors the details of a shocking crime or could arouse passion or prejudice. *Moya v. People,* 88 Colo. 139, 293 Pac. 335; *Martinez v. People,* 124 Colo. 170, 235 P. (2d) 810; *King v. People,* 87 Colo. 11, 285 Pac. 157; *Archina v. People,* 135 Colo. 8, 307 P. (2d) 1083. Here the photograph was a picture of the deceased taken in the mortuary shortly after the killing. It portrayed the bullet wounds and the People were entitled to have the jury observe this picture for that purpose.

■ The next point which we treat is the complaint

by the People that a witness was not permitted to identify the defendant because when the witness was asked if he saw in the court room the individual who had been holding the gun at the scene of the killing, he answered, "Well, I am not sure, but I think I recognize him."

At this point defense counsel objected on the ground that if the witness was not sure, he had disqualified himself to make any identification. The court sustained this objection, and in so doing committed error. It is not essential that a witness be free from doubt as to the correctness of his opinion nor that he be able to identify the accused positively, 2 Wharton's, *Criminal Evidence*, (12th ed.) 380 §533. The uncertainty of identification goes to its weight rather than to its admissibility. *State of California v. Charles Cahan*, 297 P. (2d) 715, c.d. 352 U. S. 918.

The People urge that in the event we find that prejudicial error was committed by the trial court granting the motion to dismiss that we proceed to determine the question as to whether a new trial for Spinuzzi would constitute double jeopardy. This is an issue upon which we decline to speculate, since it is not presently in the case and may never arise.

The rulings and judgment are disapproved.