## No. 22869.

JOE M. MATHIS *v.* THE PEOPLE OF THE STATE OF COLORADO.
(448 P.2d 633)

Decided December 23, 1968. Rehearing denied January 13, 1969.

506

EDWARD H. SHERMAN, Public Defender, JOSEPH R. QUINN, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, GEORGE E. DeRoos, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

JOE MATHIS seeks review of a judgment entered on the verdict of a jury which found him guilty of aggravated robbery, assault with intent to commit murder, and conspiracy to commit both of the principal crimes. The charges arise from the robbery of a Safeway store and the brief gun battle which followed when the arrival of police interrupted the robbery. Although three men were involved, apparently only Mathis has been apprehended and brought to trial.

Mathis contends here (a) that certain evidence was erroneously admitted at his trial; (b) that other ad-

mitted evidence was obtained by an unlawful search and seizure; (c) that a statement made by Mathis to the police was erroneously admitted; (d) that the court erred in refusing to enter a judgment of acquittal; and (e) that certain instructions were defective. We find no error, and accordingly we affirm the judgment of the trial court.

I.

■ Defendant's contention that the court erred in receiving a glove, black jacket, pistol and stocking cap in evidence cannot be sustained. Shortly after the robbery, the black jacket (Exhibit A) was found lying on the ground near a tree a few blocks from the Safeway store. The glove, pistol and cap (Exhibits K, N and R, respectively) were found the day after the robbery in a vacant lot one block directly south of the store.

■ Objection was made to the exhibits on the grounds that they had not been sufficiently connected to Mathis or the crime. As we said in *Washington v. People,* 158 Colo. 115, 405 P.2d 735, *cert. denied,* 383 U.S. 953, 86 S.Ct. 1217, 16 L.Ed.2d 215, evidence must be connected with the perpetrator, the victim or the crime to establish its relevance and materiality. The black jacket, which had a distinctive gold stripe, was identified by a store checker as the jacket worn by one of the three robbers, or "one identical to it." A police officer positively identified the jacket as the one worn by one of two men who fired back at him as they ran down the street situated east of the store. In view of this testimony the jacket was connected with the crime, and there was no error in receiving it in evidence. See *Gurule v. People,* 150 Colo. 240, 372 P.2d 88, and *Miller v. People,* 141 Colo. 576, 349 P.2d 685.

There was testimony from a store employee that one of the three men wore gloves. In *Miller v. People, supra,* we cited and impliedly approved *People v. Allen,* 17 Ill.2d 55, 160 N.E.2d 818, where there was evidence that one of two burglars wore gloves which were found in

a field where the defendant was seen running. The Illinois court held that the gloves were sufficiently connected with the crime to be admissible. Moreover, in *Bustos v. People,* 158 Colo. 451, 408 P.2d 64, we held that a mask found near the scene of a robbery was sufficiently connected with the crime to be admissible, after a witness had testified it was just like the one the defendant wore. Accordingly, there was no error in receiving the glove in evidence.

Another store employee testified that Exhibit N was the "long-barrelled" revolver used in the robbery. Its connection with the crime is therefore clear, and no error was committed in receiving it in evidence. See *Miller v. People, supra.* Similarly, there was no error in receiving the black cap in evidence. A witness testified that it "looked like" the hat worn by one of the men. It was therefore sufficiently identified under the rules of *Miller v. People, supra,* and *Gurule v. People, supra.*

II.

Found in an automobile parked a few blocks from the Safeway store were the mate to the glove found in the vacant lot and an ignition key (Exhibits L and O, respectively). Both the glove and the key were received in evidence over the defendant's objection that they were the product of an unlawful search and seizure. The police had no warrant to search the car.

Consistent with the protection afforded by the fourth amendment to the United States Constitution, an automobile may be searched at a time and place remote from the arrest where the police have valid custody at the time of the search; they have made a valid arrest; and the search is made for the fruits of the crime, or instruments or evidence relating to the crime. *Stewart v. People,* 162 Colo. 117, 426 P.2d 545. See *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

In *Cooper v. California, supra,* the warrantless search of an impounded auto a week after arrest was upheld. In the instant case, police were looking for the car in connection with the robbery after having arrested Mathis at 8:20 P.M. Its description had been broadcast over the police radio. It was found at 3:30 the next morning, and the search which followed immediately was for evidence which the police had reason to believe was located in the car. See *State v. Omo,* 199 Kan. 167, 428 P.2d 768. The police officer who found the car had its description and had at least twice previously stopped Mathis in it for questioning.

■ The lawfulness of the possession of the car by the police derives from Helen Littleton's notification to the police that she did not know where her car was and that she was looking for it. Helen, the owner of the car, had loaned it to Mathis, her fiance, at 4:15 the afternoon of the crime, after he had driven her to work. The notification to police impliedly authorized them to return the car to her if they found it. The duty which they had to protect her property authorized their entry into the car, which was parked at the curb with the key in the ignition. See *State v. Criscola,* 21 2d Utah 272, 444 P.2d 517; and *State v. Armstrong,* 149 Mont. 470, 428 P.2d 611. Under the circumstances, therefore, we conclude that the glove and ignition key were properly received in evidence. See *Scott v. People,* 166 Colo. 432, 444 P.2d 388; and *Stewart v. People, supra.*

### III.

■ Mathis contends further that the introduction in evidence of a statement which he made to a police detective ("He stated that he could not talk or he would be knocked off when he reached the penitentiary.") denied him the privilege against self-incrimination and the right to counsel. Ordinarily we would not consider this question, because Mathis did not object to the evidence at trial and did not raise the question in his motion for new trial.

█ But we are compelled to point out here that the statement was elicited on re-direct examination only after defense counsel on cross-examination had several times questioned the police detective whether Mathis denied participation in the crime. Since counsel alluded to the statement in an effort to buttress his defense, the prosecution was entitled to elicit the verbatim statement for consideration by the jury. See *Peterson v. People,* 153 Colo. 23, 384 P.2d 460. Under the circumstances, we cannot say that its introduction in evidence constitutes reversible error.

IV.

█ We now turn to defendant's contention that the court erred in its refusal to enter a judgment of acquittal after the prosecution rested its case. The question which we must resolve is whether the prosecution offered sufficient evidence to make out a *prima facie* case which would require submission of the matter to a jury. We conclude that the court did not err in refusing to grant the defendant's motion.

██ At this point, we note that circumstantial evidence need not amount to a mathematical demonstration of guilt. *Gonzales v. People,* 128 Colo. 522, 264 P.2d 508. The nature of circumstantial evidence implies the weaving of a fabric of known facts, which may be inconsequential alone, but become important when they are tied to other facts which lead to inevitable conclusions as to facts in issue. *Militello v. People,* 95 Colo. 519, 37 P.2d 527.

█ Where there is evidence in the record from which a jury can find beyond a reasonable doubt that the circumstances are such as to exclude every reasonable hypothesis of innocence, we cannot say that the trial court erred in refusing to enter a judgment of acquittal, nor will we sit as a thirteenth juror and set aside a jury verdict because we might have drawn a different conclusion from the same evidence.

According to the testimony, at 7:45 P.M. on December

28, 1965, three armed Negro men wearing plastic masks and stocking caps entered a 'Safeway store at 46th and Elizabeth in Denver. One carried the "long-barrelled" revolver which was received in evidence as Exhibit N. It appears from the transcript that this man also wore gloves, a black jacket and a black stocking cap. A store employee stated that this man was the tallest of the three. During the course of the ensuing robbery, a police car arrived. After firing a single shot through the store window at the police, two of the three men ran from the front door, and went south down the street adjacent to the store.

By that time, the officers had left their car and were pursuing on foot. Both men fired back at the police. They disappeared down an alley leading south from the store across a block lying between 45th and 44th Avenues. The next day the "long-barrelled" revolver, the black stocking cap and a glove were found in a vacant lot a short distance from the end of the alley. As we have held, all were properly received in evidence.

 It is appropriate to note at this point that identity is provable by the height and clothes worn by the defendant. *Bingham v. People,* 157 Colo. 92, 401 P.2d 255, and *Thompson v. People,* 139 Colo. 15, 336 P.2d 93. Like the store employees, the officers testified that the man wearing the black jacket was the taller of the two men who ran from the store. One estimated his height at 5′9″, which is the defendant's height. Another testified that the height of the taller man corresponded to the defendant's. There was also testimony that the men wore black pants, as did Mathis when he was arrested. Apart from testimony that all were Negroes, no direct evidence of identification could have been offered because the men wore plastic masks over their faces when they were in the store.

A few minutes after the gun battle, Whalen, a witness for the state, saw a man standing next to a tree behind his small grocery store, which is two and one-half blocks

east of the point where the revolver, mask and cap were found. Whalen testified that the man was wearing a light-colored shirt. As Whalen approached, the man jumped a fence on his property and started running in a westerly direction across his lot. At that moment, police cars with spotlights flashing came down a nearby alley. As Whalen watched, the man turned, jumped the same fence, and started running east across the street. At about the same time, Whalen's son, who was not with his father, saw a man on his knees beside his father's car, which was parked at the curb on the same street. The boy approached and asked what the man was doing. He replied, "Hiding, man. The cops are after me." and then ran east.

At 8:20 P.M., minutes after the encounter just related, police car headlights revealed a man lying under a car parked in a vacant lot across the street from Whalen's store. The man, a Negro, who is now the defendant, was arrested immediately. At his arrest he was wearing a light-colored shirt and black pants, but had no jacket. A short time later, the black jacket was found next to the tree where Whalen noticed the man. Several hours after that discovery, police found a car parked next to the curb about five blocks from the Safeway store. Inside the car, police found a glove which comparison revealed was the mate to the glove found in the vacant lot south of the grocery store, along with a cap and revolver identified as having been used in the robbery. As we have already pointed out, Mathis drove Helen Littleton to work late in the afternoon of the robbery, and borrowed the car from her.

██ ██ A jury is permitted to draw any reasonable inference of guilt from the evidence before it. Where the defendant elects not to testify, he cannot successfully complain to this Court that the jurors have drawn inferences against him which are warranted by the evidence. *Schamber v. People,* 159 Colo. 102, 410 P.2d 514; and *Allison v. People,* 109 Colo. 295, 125 P.2d 146.

514

■ From the evidence the jury could properly have inferred that Mathis participated in the robbery, fled down the alley, left certain articles in the vacant lot, and then ran to the Whalen store, where he left his jacket next to the tree. Under all the circumstances present here, the presence of Mathis clad only in trousers and a short-sleeved shirt hiding under a car in a vacant lot in the near vicinity of the crime on a Denver mid-winter evening shortly after the robbery, strongly supports the hypothesis that he participated in the crime. When considered with the rest of the evidence, the defendant's statement to the police tends also to support the inference that he was involved in the crime. On the basis of the foregoing, we conclude that the evidence was sufficient to make out a *prima facie* case.

## V.

■ To avoid redundancy, we will consider together the contentions that the court erred in failing to instruct the jury on both the definition of specific intent and the definition of assault. At the outset, we note that Mathis did not tender his own instructions on the two points, nor did he object to the instructions given. Further, he did not raise either point in his motion for new trial. Under the circumstances, we assume that defense counsel did not believe that Mathis would be prejudiced by the lack of these instructions. We are not required to review the arguments raised here for the first time, *Rhodus v. People,* 158 Colo. 264, 406 P.2d 679, and we do not do so unless fundamental error appears.

■ We find nothing in the instructions which constitutes a seriously prejudicial error requiring our attention notwithstanding the Rule. We do not disagree with the defendant's assertion that specific intent is an essential element of both aggravated robbery and assault with intent to commit murder. But we cannot agree that the jury was inadequately instructed on this point.

■■ It is fundamental that all of the instructions

be considered together. *Davis v. People*, 112 Colo. 452, 150 P.2d 67. Accordingly, we note that Instruction No. 8 instructs the jury in part that to constitute aggravated robbery the defendant must have been armed "with intent, if resisted, to kill, maim or wound . . . ." Instruction No. 1 is to the same effect. Read in context with Instruction No. 4, which requires the People to prove each element beyond a reasonable doubt, the instructions adequately apprise the jury of the law. Similarly, Instruction No. 9 requires the jury to find that the defendant had the specific intent to commit murder.

*Armijo v. People*, 157 Colo. 217, 402 P.2d 79, which Mathis relies on, dealt with an instruction which purported to set out the law on specific intent, but instructed instead that the law presumes that the person intends the natural consequences of his acts. Since an instruction on specific intent was required, the instruction given in that case was clearly inadequate. The same circumstances, however, are not present in the instant case.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE GROVES concur.