## No. 22706.

WILLIAM HENRY COKLEY, ALIAS JAMES LEO WILLIAMS *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(449 P.2d 824)

Decided January 27, 1969. Rehearing denied February 10, 1969.

54

Leonard P. Plank, John A. Kintzele, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, George E. DeRoos, Assistant, for defendant in error.

*In Department.*

Mr. Chief Justice McWilliams delivered the opinion of the Court.

Cokley was convicted by a jury of the crimes of aggravated robbery and conspiracy and as a result thereof was sentenced to a term in the State Peniteniary. By writ of error Cokley, hereinafter referred to as the defendant, seeks reversal of the judgment and sentence thus entered. Inasmuch as the defendant's main argument concerns the sufficiency of the evidence tying him into the robbery with which he was charged, the evidence as adduced upon trial will be summarized in at least a bit of detail.

On December 11, 1965 the Crest Drug Store, located at 20th and Broadway in Denver, was held up by three, or possibly four, negroes who were armed with a "silver barreled" shotgun. At the time of the robbery there

were two employees of the drug store on duty and also in the store were several customers who were themselves assaulted and robbed by the bandits. The robbers then effected a successful escape from the scene of their crime.

About one week later the defendant was arrested at midnight at 32nd and Champa in Denver. In connection with the arrest, the defendant was first observed standing on the street corner. According to the arresting officer, he then saw the defendant take a shotgun from under his coat and pitch it (the shotgun) into a nearby snowbank. The officer thereupon took into his possession the aforesaid shotgun and placed the defendant under arrest.

Several witnesses testified that the shotgun which the defendant had in his possession at the time of his arrest "looked like" the shotgun used in the Crest Drug Store robbery, although all agreed that the shotgun used in the robbery had a stock on it, whereas the shotgun pitched into the snowbank by the defendant did not have any stock on it. One witness went a bit further than simply saying that the shotgun introduced into evidence "looked like" the shotgun used in the robbery. She testified that the shotgun had been "stuck right at me" and that it "looked exactly the same, except it wasn't in half." Also there was testimony to the effect that a "silver barreled" shotgun was "out of the ordinary," as most were said to be "blue barreled."

Two victims of the robbery "identified" the defendant as being one of the robbers, although both candidly admitted that they were not "real sure" in their identification. Each testified that the defendant "looked like" one of the robbers, and both testified that they had thus "identified" the defendant in a police line-up conducted a week or so after the robbery.

The foregoing is, in essence, the extent of the evidence tending to link the defendant to the drug store robbery. The defendant elected to exercise one of his

constitutional rights and did not testify. His only witness offered "alibi" testimony, *i.e.*, that the defendant was in the Crystal Bar at the time the robbery took place. Then, by way of rebuttal, the People offered the testimony of a police officer who had questioned the defendant shortly after his arrest. The gist of his testimony was that the defendant had first told the officer that he was working in the Crystal Bar on the night of the robbery. When the defendant was later advised by the officer that "his story" didn't check out, the officer testified that the defendant then stated that he was in a malt shop on the night of the robbery. And when the officer later told the defendant that he couldn't verify that "story" either, the defendant then declined to discuss the matter further.

At the conclusion of the People's evidence, and again at the conclusion of all the evidence, counsel for the defendant moved for a directed verdict of not guilty on the ground that the evidence tying the defendant to the robbery was legally insufficient to warrant submission of the matter to the jury. These motions were both denied and the jury thereafter found defendant guilty of both aggravated robbery and conspiracy.

 As above indicated, the central issue in this case, at least as we view it, is whether there is sufficient evidence to support the verdicts of the jury. It is not enough for the evidence to merely show the commission of a crime by some one. The evidence must also "inculpate the accused beyond a reasonable doubt." *Ortega v. People,* 161 Colo. 463, 423 P.2d 21. However, as was also stated in *Ortega,* in connection with the recognition and identification of a person, if a witness has the capacity "to observe, recollect and communicate, and has some sense of moral responsibility," his testimony should be left for the jury to evaluate. Also, as we have repeatedly held, in order for his testimony to be admissible, it is not necessary that a witness be able to make "positive" identification of the accused, and that, within

limitations, any uncertainty of identification goes to its weight rather than its admissibility. *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427. Accordingly, testimony such as "Well, I am not sure but I think I recognize him" has been held to be admissible. *People v. Spinuzzi, supra.* Following through, then, the identification testimony received in the instant case, such as "Well, I'm not sure but he looks like the person who robbed me" is also admissible.

■■ Similarly, "looks like" identification of objects or things has been held sufficient identification to warrant admission into evidence of the item thus "identified." In like vein, testimony that a sawed off shotgun "resembled" the one carried by robbers was also deemed sufficient identification to warrant admission into evidence of the shotgun. *Miller v. People,* 141 Colo. 576, 349 P.2d 685.

■■ Having determined then that the identification in the instant case of the defendant and the "silver barreled" shotgun constituted admissible evidence, the question nonetheless still remains as to whether the totality of the evidence is legally sufficient to sustain the verdicts of the jury. We conclude that the incriminating evidence, while perhaps not overwhelming, is legally sufficient to sustain the verdicts and that to set aside these verdicts would under the circumstances be an unwarranted interference by us with the fact finding function of the jury. As was said in *Mathis v. People,* 167 Colo. 504, 448 P.2d 633, involving a somewhat analogous factual situation, we are not permitted to sit as a thirteenth juror and set aside a jury verdict because we might have drawn a different conclusion from the same evidence.

■ It should be noted that this is not just a case of "partial" identification that the defendant was one of the robbers. For, in addition, there was evidence that the shotgun used in the robbery was on the defendant's person about one week later. This we regard

58

as an incriminating circumstance which fortifies and strengthens the partial identification made by not one, but two witnesses to the crime. Under our system of criminal jurisprudence the People are not required to establish the accused's guilt with absolute mathematical certainty. Rather, the material allegations of the crime charged need only be established beyond a reasonable doubt. And on review we are not at liberty to reverse a criminal conviction on the basis of a *possibility* that the defendant may have been mistakenly identified. We are simply not a fact finding body. *Kelley v. People,* 166 Colo. 322, 443 P.2d 734.

 Error is also assigned to certain testimony of a police officer relating to the extrajudicial identification of the defendant at a so-called police line-up. It is claimed that the testimony of the police officer was hearsay. Suffice it to say that we perceive no prejudicial error in this regard. See *Gallegos v. People,* 157 Colo. 484, 403 P.2d 864 for a discussion of the admissibility of extrajudicial identification.

 Complaint is also made by the defendant of the admittedly *improper,* and allegedly *highly* prejudicial, statements made by the district attorney in his closing argument. The statement by the district attorney as to his personal belief in the guilt of the defendant was improper and trial courts should begin to take appropriate action against district attorneys who in closing argument persist in conveying to the jury their "personal beliefs" based on their "long experience" in dealing with criminal matters. However, this misconduct does not necessitate a new trial. See *Rhodus v. People,* 160 Colo. 407, 418 P.2d 42; *Bizup v. People,* 150 Colo. 214, 371 P.2d 786.

Error is also urged in connection with: (1) the trial court's denial of defendant's motion to dismiss and the motion for a bill of particulars; (2) the trial court's alleged abridgment of defendant's right of cross-examination of one of the People's witnesses; and (3) re-

buttal testimony of the police officer as to the "alibi" statements given him by the defendant. These various grounds of alleged error have been examined and are deemed to be without merit. No good purpose would be served by any extended discussion of these particular matters.

Judgment affirmed.

Mr. Justice Pringle and Mr. Justice Kelley concur.