No. 23183.

LARRY GERALD MAYNES *v.* THE PEOPLE OF THE STATE OF
COLORADO.
(454 P.2d 797)

Decided May 26, 1969. Rehearing denied June 16, 1969.

Richard A. Zarlengo, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, George E. DeRoos, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Hodges delivered the opinion of the Court.

This is a companion case to *Maes v. People,* 169 Colo. 200, 454 P.2d 792.

Plaintiff in error, Larry Gerald Maynes, and his co-

defendant Maes were convicted by a jury of burglary, larceny, and conspiracy to commit both crimes. The charges arose out of a burglary at Bernard's Store in Denver, which occurred about 4:30 A.M. on April 1, 1966.

Plaintiff in error Maynes, hereinafter called defendant, was sentenced to from 8 to 10 years in the state penitentiary on each of the counts of burglary and larceny, with the sentences to run consecutively. He was sentenced to from 2 to 5 years on each of the counts of conspiracy to commit burglary and conspiracy to commit larceny, with the sentences to run concurrently with the respective sentences on the burglary and larceny counts.

The facts concerning the burglary and the police pursuit of the two men observed at the scene of the crime are detailed in *Maes v. People, supra.* The codefendant Maes was arrested at a bank parking lot in the course of the pursuit from the scene of the crime. The second man who was being pursued, although ordered to halt, did not; a shot was fired at him, he fell, and then got up and ran away. An officer testified that near where the man fell, he found a red dripping substance which looked like blood.

The search for the second man was continued in the immediate neighborhood. About an hour after the burglary, at 5:30 A.M., defendant was found lying in a crawl space under the back porch of a house located about one and a half blocks from the area of the pursuit. When found, defendant had blood on his right shoulder, and blood down the back and right side of his shirt. A sports jacket found alongside him had a hole in the right shoulder.

Defendant assigns four errors: (1) Admission into evidence of a photograph taken of defendant while he was in the crawl space was prejudicial error; (2) Admission into evidence of the sports jacket found next to defendant at the time of his apprehension was prejudicial error; (3) Circumstantial evidence was insufficient to sustain defendant's conviction; and therefore, the trial

court erred in refusing to sustain defendant's motion for judgment of acquittal at the close of the People's case; and, (4) The sentence imposed by the trial court was cruel, unusual and too harsh under the circumstances.

I.

*The photograph showing defendant under the porch.*

Defendant contends that the admission into evidence of Exhibit D, a photograph, was prejudicial error, because its only purpose was to inflame the minds of the jury. Since all of the trial exhibits were mislaid before the record was lodged in this court, we accept defendant's description of Exhibit D: the photograph showed a man under a porch, with his pants torn, his coat off, and his bare leg scratched and bruised. The exhibit was identified to be a picture of defendant when and as he was found in the crawl space under the porch of a house within two blocks of the burglarized store.

■■ Photographs are ordinarily competent evidence of anything which may be described in words. *Claxton v. People,* 164 Colo. 283, 434 P.2d 407, *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427, *Hammil v. People,* 145 Colo. 577, 361 P.2d 117, *cert. denied* 368 U.S. 903, 82 S.Ct. 182, 7 L.Ed. 2d 98, *Potts v. People,* 114 Colo. 253, 158 P.2d 739, 159 A.L.R. 1410. The testimony of two police officers described finding defendant in the circumstances which were depicted by the photograph, and defendant made no objection to this testimony. Nor was the photograph inadmissible merely because it could, as defendant alleges it did, arouse passion or prejudice. *People v. Spinuzzi, supra, Martinez v. People,* 124 Colo. 170, 235 P.2d 810; *Potts v. People, supra, Moya v. People,* 88 Colo. 139, 293 P.335.

We perceive no error in the admission of this photograph.

II.

*The sports jacket found next to defendant when apprehended.*

■ Defendant argues that the sports jacket lying

beside him when he was found in the crawl space was inadmissible, because there was no showing that it belonged to defendant, or that the hole in the right shoulder was a bullet hole, or whether it had been cleaned since it was taken into police custody.

The olive green jacket was reasonably attributable to defendant by the circumstances under which it was found. Its probative value was sufficiently established by the evidence. There was eyewitness testimony that one of the burglars wore a dark sports jacket; that one of the fleeing burglars was shot at and fell; that blood was on defendant's right shoulder when he was apprehended; and, that there was a hole in the right shoulder of the jacket.

In the light of this evidence, it is our view that the exhibit was not improperly admitted.

### III.
### *The question of the sufficiency of the circumstantial evidence.*

Defendant contends that the trial court erred in refusing to grant a judgment of acquittal, because the evidence against him is entirely circumstantial and insufficient to sustain his conviction.

■■ We reiterate that circumstantial evidence need not amount to a mathematical demonstration of guilt. *Mathis v. People,* 167 Colo. 504, 448 P.2d 633, *Gonzales v. People,* 128 Colo. 522, 264 P.2d 508. The applicable *legal* test is whether there is evidence in the record from which a jury can find beyond a reasonable doubt that the facts exclude every *reasonable* hypothesis of innocence. *Mathis v. People, supra, Militello v. People,* 95 Colo. 519, 37 P.2d 527.

A review of the *undisputed* testimony is appropriate in disposing of defendant's contention: A store was burglarized about 4:30 A.M., and a substantial amount of clothing was stolen. There were eyewitnesses to the crime, who saw only two men, one of whom wore a dark

sports jacket. Police arrived as the two burglars were running away, and the two men were continuously in sight until they reached a parking lot. At the parking lot, the co-defendant in this case was arrested. The other man continued to run, was shot when he refused to obey a halt order, fell, got up and ran away. A dripping red spot was found at the place where the man was shot, which a witness testified looked like blood.

The search for the second man continued, until defendant was found at 5:38 A.M., about an hour after the burglary. When found, defendant was in a crawl space, which was only about 3 to 4 feet wide and 2 to 3 feet high, under a porch at the back of a house within two blocks of the scene of the crime and the chase. He had blood on his right shoulder, on the right side and back of his shirt, and beside him lay a sports jacket with a hole in its right shoulder.

Defendant exercised his constitutional right not to testify, and indeed, presented no evidence whatsoever on his behalf. The case was submitted to the jury on the basis of the uncontroverted evidence which we have here summarized. A jury is permitted to draw any reasonable inference of guilt from the evidence before it. The defendant here, having elected not to testify, cannot now complain that the jury drew reasonable inferences adverse to him.

We conclude that there is ample incriminating evidence which is legally sufficient to sustain the jury's finding of guilt. And this court is not permitted to sit as a 13th juror to set aside a verdict which is supported by competent evidence. *Mathis v. People, supra, Cokley v. People,* 168 Colo. 52, 449 P.2d 824.

IV.

*The Sentence.*

The Defendant contends that under the circumstances of this case, the consecutive sentences imposed by the court are too harsh.

 As the result of the consecutive sentencing for burglary and for larceny, the defendant received a combined sentence of 16 to 20 years. The maximum statutory term for this burglary, as well as for the larceny, is 10 years. The problem posed here and the question we must decide is whether the burglary and the larceny involving *one transaction* may be subject to consecutive sentences. Under the facts of this case, which is typical of many burglary-larceny situations, it is our view that double sentencing for the same transaction is inherently wrong and basically unjust, and we believe evades the legislative intent. *State v. Satterlee,* 58 Wash. 2d 92, 361 P.2d 168, *State v. Teutsch,* 80 S.D. 462, 126 N.W. 2d 112.

The rationale in support of our determination here is as follows: To establish successfully the burglary count, the People must, together with other elements, show that at the time of breaking and entering, the burglar must have had the intent to commit larceny. The People, in order to establish the intent to commit larceny presented evidence of a larceny, which circumstantially established the requisite intent. On this basis, therefore, the burglary and larceny should be viewed as a single transaction, indivisible for purposes of punishment. Reason and justice dictate that for the purpose of punishment under these circumstances, these offenses should be merged by concurrent sentencing. See *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed. 2d 370; Annotation, 59 A.L.R. 2d 946, 994-1011.

\* \* \*

The judgment of conviction is affirmed. The consecutive sentences for burglary and for larceny are ordered vacated and this cause is remanded for the purpose of re-sentencing the defendant in accordance with this opinion.

MR. CHIEF JUSTICE MCWILLIAMS dissenting in part and concurring in part.

MR. JUSTICE DAY dissenting in part and concurring in part.

MR. JUSTICE GROVES dissenting in part and specially concurring in part.

MR. JUSTICE KELLEY not participating.

MR. CHIEF JUSTICE MCWILLIAMS concurring in part
and dissenting in part:

I concur in the determination by the majority that the defendant's convictions for burglary, larceny and conspiracy to commit each of these two separate and distinct crimes should be affirmed. I dissent from that portion of the majority opinion which orders the trial court to modify its sentence so that the sentence imposed on count 3 (grand larceny) shall run concurrently with the sentence imposed on count 1 (burglary). In my view we have no power or authority to direct such a modification.

The defendant was charged with having burglarized a building belonging to Barnard's Incorporated on April 1, 1966. The burglary statute in effect as of that date was C.R.S. 1965 Perm. Supp., 40-3-5 and that statute defined the crime of burglary and then went on to declare that a person convicted of such crime *shall be* punished by confinement in the state penitentiary for a term of not less than one year nor more than ten years.

In a separate count defendant was also charged with having committed on or about April 1, 1966, the crime known as grand larceny, namely, the theft of some 127 sport jackets, 29 sweater shirts and 1 sport shirt, all of a total value in excess of $50. The larceny statute in effect as of April 1, 1966 was C.R.S. 1963, 40-5-2, and that statute defined the crime of larceny and then provided that a person convicted of larceny where the article or articles stolen exceed the value of $50 *shall be* punished by confinement in the penitentiary for a term of not less than one year nor more than ten years.

A jury convicted the defendant of both burglary and larceny and in connection with the larceny conviction the jury set the value of the stolen articles as "over and above $3,000."

Based upon these two particular convictions the trial court sentenced the defendant to a term of from eight to ten years on the burglary charge and a similar term of from eight to ten years on the larceny charge, the two sentences to be served consecutively and not concurrently. I recognize that the defendant was also sentenced to a term of from two to five years in the state penitentiary on the crimes of conspiracy to commit burglary and conspiracy to commit larceny, but these sentences were to be served concurrently with the sentences meted out on the larceny and burglary counts. Hence, the sentences imposed on the conspiracy counts have no bearing on our present discussion.

I am uncertain as to whether the majority hold that the consecutive sentences imposed by the trial court on the burglary and larceny convictions were unlawful in the sense that the trial court did not have the power to so do, or that the consecutive sentences, though lawful, were simply "inherently wrong and basically unjust . . . ." In my view the majority opinion is unclear in this regard. But in any event, the authority cited by the majority in support of their order to the trial court to make these particular sentences run concurrently, rather than consecutively, is singularly unconvincing, at least to me. Let us now examine the authority relied upon by the majority to support what I believe to be a rather startling disposition of the present controversy.

*State v. Satterlee*, 58 Wash.2nd 92, 361 P. 2d 168 presents a lesser included offense situation and in connection therewith the Supreme Court of Washington declared that one who pleads guilty to an "included offense" (larceny) and is punished therefor cannot thereafter be prosecuted for the greater offense (robbery), the lesser offense in such case being of course an essential ingredi-

ent of the greater. The instant case is clearly *not* a lesser included offense situation, as burglary is most certainly not a lesser included offense in a larceny charge, nor is larceny a lesser included offense in a burglary charge. Hence, I do not regard *Satterlee* to be any authority for the conclusion reached by the majority.

Nor in my view does *State v. Teutsch,* 80 S.D. 462, 126 N.W. 2d 112 furnish much, if any, support for the present remand to the trial court. There the defendant was convicted under two counts both of which related to a *single* offense, and it was held that though a sentence on each count did not constitute double jeopardy a so-called "general sentence" should have been imposed. The charge against the defendant in that case related to the failure to pay the state certain motor fuel taxes collected by the defendant. Hence, the factual situation in *Teutsch* is completely dissimilar to that of the instant one. Be all that as it may, in that case the Supreme Court of South Dakota actually recognized and approved the general rule on this subject, which is that "the same act or transaction may constitute two distinct offenses and justify conviction on both and separate sentences to run consecutively if each offense as defined by statute requires the proof of some fact or element not required to establish the other." Certainly burglary requires the proof of some fact or element not required to establish larceny, namely a breaking and entering, be it with or without force, and conversely, larceny also requires proof of some fact or element not required to establish burglary, namely the felonious stealing, taking and carrying away of the personal goods or chattels of another. In my view the *Teutsch* case supports my position on this matter, and not the position taken by the majority.

Finally, I suggest that *Prince v. United States,* 352 U.S. 322, 77 S. Ct. 403, 1 L.Ed. 2d 370 be confined to the facts of that particular case. And this is not just my idea, as indeed the United States Supreme Court has itself clearly indicated that *Prince* should be narrowly applied. In that

case the United States Supreme Court was faced with consecutive sentences imposed for the crimes of bank robbery and entering a bank with the intent to commit a felony. In connection therewith, that Court clearly recognized that it was dealing with a special type statute, namely the *Federal Bank Robbery Act,* and observed as follows: ". . . . we are dealing with an unique statute of limited purpose and an inconclusive legislative history. It can and should be differentiated from similar problems in this general field raised under other statutes. The question of interpretation is a narrow one and our decision should be correspondingly narrow." I agree that the rule announced in *Prince* "can and should be differentiated from similar problems in this general field raised under other statutes." And this is the sum total of the authority relied upon by the majority to depart from what has been accepted practice and procedure in this state for some ninety-three years.

Briefly stated, my views on the particular subject at hand are as follows: (1) burglary and larceny are separate and distinct crimes based on separate and distinct acts, even though the acts may, as they do here, arise out of the same general transaction, which transaction, though perhaps single and continuing in nature, is still very much divisible; (2) neither burglary nor larceny is a lesser included crime of the other and neither in some mystical way ever merges with the other; and (3) where a defendant in a given case is convicted of both burglary and larceny the trial court should impose a separate sentence for each and whether such sentences are to be concurrent or consecutive is a matter which lies exclusively within the province of the trial court and is not subject to review by us. I recognize that a trial court often, perhaps generally, imposes separate sentences for burglary and larceny but then declares that they shall be served concurrently. However, I still maintain that a trial court has the power to impose consecutive sentences for burglary and larceny, if it feels that the

justice of the case at hand demands it. The foregoing, I believe, is in conformity with the general rule on this particular subject and is in conformity with the long-standing practice in this state. In support of my position, see: 21 Am. Jur. 2d Criminal Law § 546, *et seq.*; 24 B C.J.S. Criminal Law § 1990, *et seq.; United States ex rel Bryant v. Fay,* 211 F. Supp. 812; *Chrysler v. Zerbst,* 81 F. 2d 975; *People ex rel Cannata v. Jackson,* 6 App. Div. 2nd 919, 175 NYS 2d 945; and *State v. Teutsch, supra.*

It is interesting to note that even counsel for the defendant, both in his written brief and upon oral argument, clearly concedes that the action of the trial court in imposing consecutive sentences on burglary and larceny was lawful, and only claims that under the circumstances of this particular case such was harsh and unfair. In this regard in his brief defendant states as follows: "There is no question that a court may impose consecutive sentences on a defendant convicted of more than one count of an information, but it is submitted that this should be done only in rare cases in which there are aggravating circumstances."

Whether the several sentences fit the several crimes committed by the defendant is a bit hard to tell from the record before us. We, of course, do not have the benefit of knowing what the presentence report of the defendant disclosed. Be that as it may, the question of sentence was peculiarly within the province of the trial court, and I know of no instance where this court has ever upset sentence which was lawful, on the ground that the sentence though lawful was too harsh.

Finally, I recognize that some states have dealt with the problem by special legislation which would conceivably preclude consecutive sentences of the type here imposed. However, in my view, at least, our General Assembly has not thus legislated. Hence, I disagree with the statement in the majority opinion that the sentencing imposed in the instant case somehow "evades the legislative intent." What legislative intent in which statute

does the majority refer to? This to me is most unclear. As concerns the matter of legislative intent, it seems to me that the General Assembly in the statutes mentioned at the outset of this dissent has recognized that burglary and larceny are separate crimes carrying separate penalties. I for one feel we should not now change the law and the longstanding practice by judicial legislation of a most obvious type. Whether consecutive sentences for burglary and larceny, even when arising out of the same transaction, are inherently unjust or on the contrary are fitting and proper in the sense that if a person commits two separate crimes he may well expect two sentences, cumulatively imposed, is a policy matter which should be resolved by the legislature and not the judiciary.

I would therefore affirm the judgment and sentence of the trial court in its entirety.

MR. JUSTICE GROVES specially concurring in part:

As to the question of consecutive sentencing I concur, except that I do not believe that a matter of legislative intent is involved.

MR. JUSTICE DAY concurring in part and dissenting in part:

I concur with the remand of the majority opinion concerning the resentencing of the defendant because of the double sentencing for a single transaction. However, I would not have arrived at that question in this case because I dissent from the majority opinion holding that the evidence was sufficient to convict the defendant.

Maynes, when arrested, may have been a prime suspect, but never in my experience have I read a case in which even most rudimentary police work was lacking, at least in the proof offered by the prosecution. The only evidence in this record is that Maynes was found attempting to hide under a porch several blocks from the scene of the burglary more than an hour or so after it had occurred. The defendant was never identified as

being one of the two burglars. He was not placed by anybody at the scene of the crime. Any connection with the other defendant Maes was not established. An automobile left at the scene of the crime and in which the clothes taken from the Bernard's store were placed and abandoned by flight, was not connected with the defendant. One of the pursuing merchant police was not permitted to conjecture that the person fleeing from him had actually been struck by a bullet from his gun, so there was no evidence before the jury that the fleeing person was shot. There was evidence that the one in flight fell and that at the point where he fell there was blood. How great was the quantity of blood was not established. Whether it could have been made by the person falling cutting his knee in the fall is equally plausible. In any event no blood samples were taken from the place where the fleeing burglar was said to have fallen to compare it with anyone later apprehended. The meager evidence produced did establish that defendant had blood on his shoulder. The nature of the wound from which the blood flowed was never established. If there was a bullet wound there must have been someone to establish that, but no such evidence was produced. If there was a bullet either the projectile went completely through the defendant's body or it was lodged in it. But, there was no evidence of him having a pistol-shot wound. If the bullet was removed from the defendant it could have been compared with the pistol from which the shot was fired at the fleeing suspect. This was not done. The nature of the hole in the jacket, whether it could have been caused by a bullet or was a tear on a nail or caused by some other instrumentality, was never established. In short, the gap between placing this defendant at the scene of the burglary and his final conviction is so wide one could drive the whole police squad through it. There certainly was no proof sufficient to overcome the presumption of innocence accorded every defendant. Suspicion and conjecture should never take the place of the

proof beyond a reasonable doubt required in a criminal case.

Mr. Justice Groves authorizes me to state that he joins in the dissent. He has expressed his own special concurrence.