Mr. Chief Justice Pringle
delivered the opinion of the Court.
Gabriel Ortez Lopez, hereinafter referred to as the defendant, brings this writ of error from his conviction for first-degree murder. The victim, known as Alfred Pierce or Butch Powers, will be referred to as the decedent. The defendant in error will be referred to as the People.
The events in question took place on the evening of December 6, 1967, in Colorado Springs. Darold Fimple, Eddie Valdez, Abel Martinez, and the defendant went to the decedent’s house and there a social gathering occurred. During the gathering, several bottles of whiskey were consumed by the participants. At some point it was decided to shift the party to the defendant’s apartment. On the way, another bottle of whiskey was purchased. On arriving at his apartment, the defendant was seen locking the glove compartment in his car.
*505 Shortly after their arrival at the apartment, the decedent accused the defendant of making advances toward his (decedent’s) wife while he was in the service and in jail. The wife testified that these advances were made, and that she had told the decedent about them. The defendant denied the charges. The decedent turned his attention from the defendant to Abel Martinez, and the two had a heated discussion in the bathroom.
At this time, the defendant left the apartment to go downstairs. He claims he had to relieve himself, but the inference sought by the People was that he went to retrieve his gun from the locked glove compartment of his car. The defendant testified that he had the gun with him at all times during the occurrences here re’ated.
After the decedent and Abel Martinez came out of the bathroom, and the defendant had also returned, the decedent again turned to accusations towards the defendant who continued to deny them. The defendant walked past the decedent into the kitchen. The decedent then stood in the doorway to the kitchen and further pushed the point. The decedent was then heard to say, “Put the gun down, Jake [a name by which the defendant was known].” At this point, the defendant fired a shot into the floor, and ordered the decedent to “back off.” The decedent stood his ground, and the defendant fired a fatal second shot to the chest, which pierced the heart. The decedent raised his arms and attempted to speak, but was unable to do so. He turned as he fell, and the defendant fired a third and final shot to the back.
The defendant stood over the body and announced that this was his “second victim,” and inquired whether he should shoot him again to make sure he got him. The defendant kept the others away by brandishing the gun at them, and made threats to them. He finally left the scene. While driving south, he threw the gun out of his car, and it was never recovered. He was eventually arrested in his car.
The testimony was consistent that the decedent liked *506 to fight, and that the defendant was aware of that fact. The defendant admitted, however, that the decedent fought with his fists, and never carried a weapon. The defendant testified that he carried the gun for protection as he often went out with married women.
The defendant contended that after he shot into the floor the decedent had picked up a bottle of whiskey, and had threatened the defendant with it. He testified that the decedent reached for the bottle as if to use it as a weapon, and that he carried it to the floor as he fell. When the police arrived, the bottle was on a table, and no whiskey was found on the floor near the body. Darold Fimple testified that he had the bottle at the time of the shooting. This was corroborated by Eddie Valdez.
The defendant testified that the only way out of the kitchen, and then out of his apartment, was past the decedent, and he stated that he expected the warning shot to scare the decedent, but instead the decedent reached for the bottle. Defendant said that he was in fear at that time, and shot. The jury was instructed on self defense, first and second degree murder, voluntary manslaughter, and involuntary manslaughter.
Three allegations of error are raised: (1) That the testimony relating to the defendant’s statements after the shooting about his “second victim” were improperly admitted, (2) that there was insufficient evidence to warrant sending the case to the jury on first degree murder, and (3) that there was insufficient evidence to warrant sending the case to the jury on second degree murder. We find no error regarding the first two allegations, and affirm. Under this disposition, we need not discuss the third allegation.
I.
The defendant first argues that it was error to allow witnesses to testify about his remarks after the shooting to the effect that this was his second victim. *507 We do not agree. The record clearly reveals that this testimony was elicited by the People for purposes of showing the defendant’s state of mind regarding intent and malice, not to show another offense. For this limited purpose, the testimony is admissible. 1 Wharton’s Criminal Evidence 524 (12th ed. 1955). In accordance with Stull v. People, 140 Colo. 278, 344 P.2d 455, a cautionary instruction was given to the jury relating to the effect of the testimony given.
II.
Defendant’s second argument is that there was not sufficient evidence as a matter of law to warrant sending this case to the jury on first-degree murder. Again, we do not agree. The applicable law was aptly set forth in Hampton v. People, 171 Colo. 153, 465 P.2d 394, wherein we said:
“The defendant next contends he was denied a fair trial and the court erred prejudicially when it submitted the case to the jury on the theory of first degree murder when not a scintilla of evidence existed showing ‘express malice,’ ‘premeditation’ or ‘wilfulness,’ all of which are material elements of the crime.
“ ‘Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof.’ C.R.S. 1963, 40-2-2.
“Express malice exists when there is a deliberate and formed design to take a human life. (People v. Spinuzzi, 149 Colo. 391, 396, 369 P.2d 427) and is a question of fact to be determined by the jury on all the evidence in the case (Kent v. People, 8 Colo. 563, 9 P. 852). Malice, premeditation and deliberation may also be inferred from the use of a deadly weapon. Power v. People, 17 Colo. 178, 28 P. 1121.” Id. at 163-164, 465 P.2d at 399-400.
Our review of this record indicates to us that there was sufficient evidence as a matter of law to warrant the trial court in submitting the case on first *508 degree murder. There was the People’s evidence that the decedent did not have any weapon, including the bottle, and did not attempt to move towards the defendant. Several times after the argument began, defendant was in a position to withdraw, but did not do so; Compelling, also, were the remarks of the defendant himself. Certainly a jury could infer from his referring to the decedent as a “victim” that he was possessed of the necessary express malice at the time of the shooting. The jury could also infer from the defendant’s shooting the third shot to the back as the decedent was falling to the floor that the defendant was not defending himself from an attack. Finally, the jury could infer that there was express malice from his remark after the decedent had fallen about shooting the decedent again to be sure he “got” him. That the defendant presented conflicting evidence and sought different inferences from the People’s evidence is a matter to be left to the jury. As implied in Hampton v. People, supra, it is only when there is no evidence from which the jury could make the inferences of malice and intent that a trial court may take the case from the jury as a matter of law. That is not the situation here.
As we are of the opinion that there was sufficient evidence to submit the case to the jury on first-degree murder, we necessarily conclude there was sufficient evidence to submit the case on the lesser included offense of second-degree murder.
The judgment is affirmed.