JONES *v.* STATE.

4785                                              273 S. W. 2d 534

Opinion delivered November 1, 1954.

[Rehearing denied January 10, 1955.]

*Paul Gutensohn* and *G. L. Grant,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas* and *Claude Carpenter, Jr.,* Assistant Attorneys General, for appellee.

WARD, J.  Appellant prosecutes this appeal from a conviction, with punishment fixed at 15 years in the penitentiary, for an assault with intent to rape, based on an information charging rape.

Since appellant makes no contention that the evidence was insufficient to support the conviction, it will not be necessary to set out in detail all the testimony. It is also noted here that the attorney who represented appellant in the trial court does not represent him on this appeal.

*Facts* sustained by the testimony.  On March 14, 1954, Mrs. Anna Mae Moses asked the prosecuting witness, Betty Jo White, to baby-sit with her child while she went out with the appellant, Charley Jones.  Mrs. Moses and appellant left her apartment around 8:00 P. M. and returned somewhat around midnight, when they

found Betty Jo asleep. Mrs. Moses and appellant got into an argument which awakened Betty Jo, when appellant, under the influence of liquor, assaulted Betty Jo, removed some of her clothes, and proceeded to have intercourse with her forcibly and against her will. It is stated also that appellant threatened to kill Mrs. Moses to prevent her interference, and that he had in his possession a knife which he threatened to use. At the first opportunity Mrs. Moses gave the alarm. After appellant had accomplished his purpose he ran away but was later apprehended by the officers.

For a reversal appellant urges several grounds which we shall hereafter discuss separately.

1. That the court erred in refusing to require Betty Jo White to answer certain questions. Betty Jo, the prosecuting witness, was asked on cross-examination if she was a virgin. The court refused to let her answer the question, but no exception was saved by defendant. Thereupon appellant's counsel asked Betty Jo if she had ever had intercourse with anyone other than the defendant, Charley Jones. An objection was made and the question was withdrawn by the defendant's counsel. Since no objection was interposed the competency of the question will not be considered by this court. See *Yarbrough* v. *State,* 206 Ark. 549, 176 S. W. 2d 702.

2. Error is alleged because defendant's attorney failed to call him to the witness stand and failed to call other witnesses which were available. We can see no possible error based on the fact that appellant was not placed on the witness stand by his counsel. It is not contended that any request was made to the court by either appellant or his attorney for appellant to testify. The defendant had a right to take the stand or to refuse to take the stand. The record reflects that appellant may have been guilty of other violations of the law, and we cannot say that it was not for his best interest to refuse to take the stand and refuse to submit himself to cross-examination.

We see no error in appellant's attorney failing to call certain witnesses to testify in his behalf. Contrary to appellant's statement some testimony was introduced in his behalf. The record also discloses that several other witnesses were subpoenaed but were not used. Again it was the privilege of defendent and his counsel to use or refuse to use any witnesses which they had available. There is nothing in the record that convinces us that appellant's rights were prejudiced because of the failure of certain witnesses to testify in his behalf.

3. It is contended that the court erred in allowing defendant's counsel to use profane language about him in the argument to the jury. In appellant's motion for a new trial it is stated that he requested to take the stand in his own behalf to contradict the testimony of Betty Jo White and Anna Mae Moses but that his attorney refused the request, stating: "No ........ ........... you, we have got this thing won so just keep your damn mouth shut and I will conduct this trial." While we of course do not commend this language yet it appears that such statement, if made at all, was not made in the presence of the jury and therefore could not have been prejudicial to appellant.

Again it is contended by appellant that his attorney, in presenting his case to the court and jury, in substance stated: "I am Charley's attorney but he is not worth a damn;" "Charley Jones is no damn good;" "Charley Jones has been convicted of everything in the book and he is not worth a damn;" and "If reputation or character is what the state wants to prove as an issue I admit that defendant has been convicted of all the crimes in the book and is no damn good."

Certain affidavits and oral testimony were submitted on the motion for a new trial which in some measure substantiate the fact that appellant's attorney did use language similar to that quoted above. However the trial court, in his opinion, had a somewhat different version of what occurred. He stated: "The Court understood that in the opening statement [appellant's attor-

ney] said in substance that the defendant had been guilty of nearly everything in the book, but that he was not guilty of this charge and that whatever else he may have been guilty of should not be considered; that he could only be tried on this charge. It is also urged that in the argument of the case to the jury at the conclusion of the trial that he made other statements that were prejudicial. The Court will recall that [appellant's attorney] in his argument to the jury said in substance, if not exactly this; 'the defendant, if the court will pardon me, is not worth a damn, but the two girls who testified against him are not either,' and the court recalls that those two statements were the only statements of that nature made, and the court knows that other similar statements attributed to him did not occur during the trial.'' We likewise agree with the Court's conclusion in this matter that this does not necessarily indicate a tactical blunder on the part of appellant's attorney even though the language was improper. It must be remembered that appellant was charged with a crime of rape, the extreme penalty of which is death; that the evidence in this case is direct and abundant to sustain, perhaps, the charge of rape; and that he was convicted of the lesser offense and was not given the maximum penalty therefor. Under all the circumstances we are of the opinion that the alleged conduct of appellant's attorney as set out above is not sufficient to justify a reversal.

In support of appellant's argument under this point he cites the case of *Garner v. State,* 97 Ark. 63, 132 S. W. 1010. A portion of the opinion is copied setting forth the derogatory remarks made by the attorney about his client. Following this appellant makes the statement that the Supreme Court promptly reversed the case. We do not entirely agree with appellant's interpretation of this case. In the first place the defendant was a minor and the language indicated a complete abandonment of all interest in his welfare, and in the second place the court based its reversal not on the language used but because ''the court made no effort, other than this question, to ascertain whether the confession was voluntary, and its

admission under the circumstances in the absence of appellant's attorney was error and highly prejudicial. The case is reversed and remanded for new trial." Here, it must be remembered, appellant is a mature man and should bear some responsibility for selecting an attorney of his own choice.

4. It is contended that the trial court committed error in allowing the trial to proceed because of incompetency and intoxication of appellant's counsel. At the hearing on the motion for a new trial affidavits and oral testimony was presented tending to show that appellant's attorney was drunk and incompetent, because of drunkenness, to properly protect appellant's interest. The trial court found that the evidence did not justify a new trial and we cannot say this constitutes an abuse of its discretion. The sheriff who had known appellant's attorney 25 years or longer apparently agreed with the court. He testified; that he sat about 10 feet from him during the morning of the trial and was there when the attorney argued the case before the jury and was there when the jury brought in the verdict. He did state that after the case had been argued he could notice that the attorney had been drinking. A patrolman in the City of Van Buren testified that he had known appellant's attorney something like 20 years, was present at the trial and heard some of the arguments, and that he could not say the attorney had been drinking. In the Court's opinion, referred to above, it was stated that appellant's attorney came into the court room at approximately 8:30 A. M. on the morning of the trial, that he remained in the presence of the court until the trial started at 9:00 A. M., and that the trial started and proceeded until approximately 11:30 A. M., at which time the state rested; that after a conference with appellant, his attorney announced that he rested also; that immediately thereafter attorneys on both sides met with the Court in chambers to consider instructions until approximately 12 o'clock, and; that appellant's attorney was at no time out of the sight of the Court. It was further stated that the court reconvened at 1:00 P. M., the instructions were read to the jury, the case was argued, and the jury returned for

further instructions at about 3:45 P. M. The Court was of the opinion that between the time the case was submitted to the jury at 2:00 P. M. and the time it returned a verdict at about 5:00 P. M. the defendant's attorney had consumed some alcohol, and that the Court would have known if the attorney was under the influence of alcohol during the trial of the case to such an extent as to impair his ability to represent appellant.

5. The last ground urged by appellant for reversal is that the verdict was based on testimony of two witnesses, admittedly false. On the motion for a new trial appellant attempted to show by affidavits that Betty Jo White, the prosecuting witness, and Anna Mae Moses testified falsely against appellant, Charley Jones. One affiant, the mother of appellant, stated that she heard Mrs. Moses say that appellant was not guilty and it was awful for him to spend 15 years for something he didn't do. Another affiant, who lives in an apartment just under Mrs. Moses' apartment, stated that a short while after the alleged incident Mrs. Moses came to her door and said that she and Betty both had been raped by appellant; that Betty Jo was quite composed and not nervous. There was other testimony to the effect that Mrs. Moses later admitted that she had not told the truth and that appellant was not guilty. Again it is our opinion that no reversible error has been shown. Even if it be conceded for the present that Mrs. Moses would testify as indicated at another trial, still there remains other testimony sufficient to sustain a conviction here. In a similar situation this Court, in *Roath v. State,* 185 Ark. 1039, 50 S. W. 2d 985, said:

"In considering the recantation by Mrs. Griffin of her testimony in the case at bar, it may be said that it is better rule that the recantation of testimony of a material witness made after the trial and verdict is not sufficient to authorize the setting aside of the verdict and granting of a new trial where the verdict is justified on other testimony than that of the recanting witness, and in such cases we have consistently refused to reverse for a new trial." (Citing cases.)

Finding no reversible error the judgment of the trial court is affirmed.

Justices HOLT, GEORGE ROSE SMITH and ROBINSON dissent.

GEORGE ROSE SMITH, J., dissenting. There is much proof in the record to indicate that the attorney in question was intoxicated during the trial of this case. In addition to the matters mentioned by the majority, such as his failure to call witnesses and his profane abuse of his client, there is testimony that he gave the appearance of being intoxicated and that after the trial he admitted that he had been too drunk to try the case. Of much significance is the fact that this attorney did not appear at the hearing upon the motion for a new trial, when he would have had an opportunity to deny the accusation of professional misconduct.

In a situation of this kind I think we should be almost overscrupulous in protecting the judicial system from even a suspicion of unfairness and injustice. It is the judiciary which has held this lawyer out to the public as being competent to practice law, and I think our responsibility goes beyond saying that he tried the case pretty well even though he was drunk. I would treat this trial as voidable and give the appellant the option either of accepting the sentence imposed or of waiving his plea of double jeopardy and consenting to a retrial upon the original charge of rape.

HOLT and ROBINSON, JJ., join in this dissent.