## STATE v. JAMES JOSEPH GARRITY.

151 N. W. (2d) 773.

June 16, 1967—No. 40,394.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *Wallace C. Sieh,* County Attorney, for respondent.

NELSON, JUSTICE.

Defendant was convicted by a jury of the crime of theft by swindle in violation of Minn. St. 609.52 on November 30, 1965, and was sen-

tenced and committed to the custody of the commissioner of corrections for a period not to exceed 5 years. He appeals, seeking reversal of the judgment or a new trial.

The record indicates that at noon on Friday, August 13, 1965, Mrs. Mary Torgerson, a widow living in Austin, Minnesota, received a telephone call from a man who claimed to be a bank examiner from the First National Bank of Austin. He told Mrs. Torgerson that there was a discrepancy in the "old people's savings accounts" and asked her to read to him the deposits she had made in the last 3 months and also the balance in her account, which she did. He then asked her to go to the bank, withdraw $1,500, and return to her home, at which time a policeman would come for the money and take it to a "lab" to "get fingerprints." Mrs. Torgerson dressed, put on gloves as her caller had requested, stepped into a waiting cab sent by the caller, and withdrew $1,500 in cash from her bank account. She insisted on cash, even though a bank cashier, Mr. A. C. Tinderholt, suggested she take a check to guard against loss. She then returned home. She testified that the telephone rang as she came into her house, and the same man who had called before asked her "if the Policeman was there," to which she replied that he wasn't. At that moment she saw a man, allegedly defendant, walk through her front door. He took over the telephone, and Mrs. Torgerson heard him say, "O.K. here, I will bring it to the lab."

Mrs. Torgerson then put the money into the man's zippered bag, and the man assured her he would return the money the next day or, at the latest, on Monday. He did not do so and Mrs. Torgerson informed the police Monday forenoon. She described the man to the police as having brown hair, wearing a suit, very neat, and about 35 years of age. On Thursday, August 19, 1965, Officers Robert Baumgart and Robert Rysavy of the Austin Police Department took Mrs. Torgerson to Mason City, Iowa, arriving there about 9:30 or 10 a. m. She remained in the police car but later went into the office of the Chief of the Mason City Police. Defendant was arrested and she identified him in a lineup about 4:30 p. m. the same day.

The issues raised on appeal are the following: (1) Whether the evidence is sufficient to justify a verdict of guilty; (2) whether defendant's

rights under the Sixth and Fourteenth Amendments of the United States Constitution have been violated; and (3) whether the defendant was denied a fair hearing because of incompetence of counsel.

■ As to the first issue, it is clear that Mrs. Torgerson had plenty of time and opportunity to view defendant when he came into her home and took the money. She saw him enter the front door, walk across the living room, and leave by the front door. The state's exhibit No. 8, defendant's photograph, indicates that defendant's appearance is distinctive and could easily be remembered. It would only be reasonable that Mrs. Torgerson retained a vivid mental picture of defendant, composed of many details not capable of being described with exactness. Her original description given to the police—that the visitor was a white male, about 35 years old, who had dark brown hair, was dressed in a suit, and was very neat—appears to fit defendant from the photograph in evidence.

The record indicates that Mrs. Torgerson had not seen any of the men in the lineup prior to the view. The lineup was moved to a hallway in good light where Mrs. Torgerson carefully viewed the five men who were presented in the lineup, defendant, two police officers, and two salesmen, each wearing a suit and being arranged in random order.

James Murphy, who resided across the street from Mrs. Torgerson, testified that during the noon hour he saw a man dressed in a colored sport shirt enter the front door of Mrs. Torgerson's house. He also saw the man get into a car parked in front of the house and drive away. The jury, of course, could well find that Mrs. Torgerson's testimony was more reliable than Mr. Murphy's, as they evidently did.

Cheryl Stewart was defendant's girl friend and left with him for Mason City the day after the money was obtained. She testified at the trial that defendant was wearing a mustache and goatee on the day of the alleged theft. Richard Chaffee, an employee of a clothing store at Austin, had seen defendant at the store on the following day and testified that he noticed defendant was wearing a mustache but did not observe that he was wearing a goatee at that time. The record indicates that Miss Stewart, a professional dancer, knew where false mustaches could be obtained.

The jury in weighing the foregoing testimony could reasonably accept that of Mrs. Torgerson identifying defendant as the man who came to her home and obtained her money. The evidence is clearly sufficient to sustain the verdict.

 Defendant claims that he was denied rights accorded him by the Sixth Amendment in that he was not given an opportunity to obtain counsel to protect his interests at the time of the lineup at which Mrs. Torgerson identified him as the man who took her money. Defendant argues that Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977, stands for the principle that once the investigation begins to focus on an accused he is entitled to have counsel present. That case held that when the police are attempting to obtain a confession the right to counsel attaches. Defendant contends that standing in a lineup and being identified by the accuser is as damaging as a confession; that, since no counsel was present in his behalf, both his right to counsel and his right against self-incrimination have been violated; and that, therefore, testimony as to Mrs. Torgerson's identification of defendant in the lineup is inadmissible.

Defendant in his argument has overlooked the proposition that "[t]here is a distinction between bodily view and requiring an accused to testify against himself." Caldwell v. United States (8 Cir.) 338 F. (2d) 385, 389. In 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2263, the author makes the statement:

"* * * [I]t is not merely any and every *compulsion* that is the kernel of the privilege [against self-incrimination], in history and in the constitutional definitions, but *testimonial* compulsion."

The same author says (Id. § 2665):

"* * * [A]n inspection of the bodily features by the tribunal or by witnesses cannot violate the privilege because it does not call upon the accused as a witness—i.e., upon his testimonial responsibility."

See, also, Holt v. United States, 218 U. S. 245, 252, 31 S. Ct. 2, 6, 54 L. ed. 1021, 1030, in which Mr. Justice Holmes, speaking for the court, stated:

"* * * [T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."

The Constitution confers no right on an accused to be immune from the eyes of his accusers. The privilege is against testimonial compulsion, whereas exposure to view, like fingerprinting and photographing, is not proscribed. The absence of counsel at the time of confrontation at the scene of the crime has been held not to deprive an accused of the right to silence or any other right which could have been effectively asserted had counsel been present. Kennedy v. United States, 122 App. D. C. 291, 353 F. (2d) 462. See, also, Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. (2d) 908.

We have repeatedly held that before an indigent can assert that he was denied due process because of the incompetence of his appointed counsel the representation must be so incompetent as to render the trial a farce or a sham, or a mockery of justice. See, State ex rel. Adams v. Rigg, 252 Minn. 283, 89 N. W. (2d) 898, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149; State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785. See, also, Rivera v. United States (9 Cir.) 318 F. (2d) 606. We have also held that the bare assertion that the attorney for the accused is not competent is not of juridical significance. State v. Waldron, *supra.*

Defendant contends that defense counsel should have placed defendant on the stand rather than having Miss Stewart testify in his behalf. Since defendant had a record of some length, which included unauthorized use of another's automobile, his counsel's advice that he not take the stand and thus avoid damaging impeaching testimony can hardly be characterized as bad judgment. It would appear that defendant's claim of incompetence on the part of his counsel is completely without merit.

We note from a supplemental brief that defendant has raised the issue of the lack of probable cause for his arrest, contending that his arrest and detention were illegal and, therefore, the evidence obtained as a result thereof was inadmissible. Defendant argues that since he had

informed the car agency from whom he rented a car to go to Mason City of his address there and the officers, before they arrested him, knew the address was a true one, they had only an unfounded suspicion that he was the perpetrator of the crime. He contends that such mere suspicion was not enough for an arrest, citing Garske v. United States (8 Cir.) 1 F. (2d) 620; State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115; Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. ed. (2d) 134; Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. (2d) 441; Gatlin v. United States, 117 App. D. C. 123, 326 F. (2d) 666; United States v. Meachum (D. D. C.) 197 F. Supp. 803. He argues that the circumstances require a new trial, citing Fahy v. Connecticut, 375 U. S. 85, 84 S. Ct. 229, 11 L. ed. (2d) 171; Wade v. United States (5 Cir.) 358 F. (2d) 557; Palmer v. Peyton (4 Cir.) 359 F. (2d) 199. We have no quarrel with the holdings in these cases, but are unable to see that they are applicable to this one.

Nor do we see any merit in defendant's contention that the lineup violated his constitutional rights. The ordinary police lineup procedure was employed and the lineup was carried out under conditions which permitted the greatest objectivity on the part of the witness who viewed the accused with the others who were exhibited with him. Such procedure was not unfair to defendant. See, United States ex rel. Stovall v. Denno (2 Cir.) 355 F. (2d) 731. Furthermore, there was never any showing that defendant requested counsel at the time or objected to the lineup. He was not required to speak or perform any particular acts. There was no accusatorial atmosphere directed in any particular manner against defendant. Viewing the lineup as a whole, we are satisfied that the procedure was consistent with the orderly and objective due process of law guaranteed to defendant. We conclude after careful perusal of the transcript of the trial proceedings that the verdict should be allowed to stand.

Affirmed.