Andrew J. JOHNSON, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4645.

Supreme Court of Wyoming.

April 22, 1977.

Philip P. Whynott, of DeHerrera & Whynott, Cheyenne, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Jerry M. Murray, Senior Asst. Atty. Gen., and Frank R. Chapman, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Appellant was tried and convicted of the crime of aggravated robbery under § 6–66, W.S.1957, and pursues this appeal from the conviction and sentence levied thereunder. We affirm.

On July 21, 1975, at approximately 2:45 p. m., while employees Linda M. Eastin and Celia Fresquez were upon the premises of One-Hour Cleaners in Cheyenne, a young man entered the back door with a gun in his hand and demanded that he be given the money in the establishment. Mrs. Eastin, the assistant manager, took approximately $80 from the cash register and gave it to him. While this was happening, Mrs. Fresquez came in and she was ordered to lie down, which she did. Both of the women saw the person who perpetrated this robbery. His face was covered by a coffee-colored nylon stocking. They did observe that he was black and was wearing black tennis shoes with white stripes; that he was of medium build—over 5 feet 6 inches; that he was wearing a turquoise t-shirt and faded levis; and they did observe his arms. Neither of the women saw the man as he was leaving, nor did they hear any car motor or car driving away. The police were immediately notified; and Deputy Sheriff Grady, who was in the area—having received a description of the suspect via radio as being a male Negro about 5 feet 8 inches to 5 feet 10 inches, of slender build, wearing a blue t-shirt, faded levis and black and white tennis shoes—made general inquiries in the neighborhood. Among those to whom he talked were two fifteen or sixteen-year-old girls whose names he does not recall. They indicated to him they had seen a man of that description enter a house at 2623 Bent. He immediately called other officers, who came to the house. Detectives Backus and Wilkinson arrived shortly. Wilkinson knocked on the door, and Henry Rudolph, an owner or renter of the premises, answered the door and let the officers in. Rudolph and a Johnny Martinez were in the front room, and while Rudolph was placed in Wilkinson's charge, Backus went to the rear of the house to see if there was an exit. While going there he saw in the stool in the bathroom a stocking, which he retrieved. He observed the toilet had been recently flushed and the water was still moving through.

At that time Rudolph indicated the closet in the bedroom, and the officers approached the closet with drawn guns and ordered the occupant to come out. Defendant replied, "I'm coming out, don't shoot." He was turned over to a policeman and taken to a car. At the time of his arrest defendant was wearing black and white tennis shoes, faded jeans, and a white t-shirt. When Backus returned to the bedroom he saw a blue t-shirt on a pile of dirty clothes in the corner. When Wilkinson entered the bedroom, having received indications that defendant was in the closet, he noticed a closet off the living room with the door open and saw a gun lying on the floor of this closet.

Sheriff Flynn, having heard of the robbery and investigation, arrived at the premises shortly and along with Detectives Backus and Wilkinson searched the kitchen area. He found $79 in currency underneath a toaster in the kitchen.

The witnesses Eastin and Fresquez identified the stocking as being the one worn by defendant and identified the blue t-shirt as the one worn by defendant. Eastin testified that the gun found on the premises where appellant was arrested was the same color and shape, and had the same size muzzle or "hole in the end," and that it was a revolver. Fresquez said the barrel and sight on the end of the gun were similar to the one used in the robbery. On cross-examination she related she "has been around

guns" and that the front sight was different from the guns she had observed. Both expressed the view that it was the gun which had been pointed at them; also, that the color of the robber's skin was the same shade, and that his height and build were similar to the man who entered the premises. They could observe no difference between the defendant and the person they had observed at the time of the robbery.

## INSUFFICIENCY OF EVIDENCE

Appellant contends that the trial court was in error when it denied his motion for acquittal at the close of the State's case, arguing that there was insufficient evidence to sustain his conviction.

Appellant implies that because his conviction is based upon circumstantial evidence, this court should apply a different test in determining the sufficiency of the evidence and emphasizes the lack of what he terms direct proof. The standard of review which this court must follow in such cases is as set out in *Blakely v. State*, Wyo., 542 P.2d 857, 863:

"* * * It does not in anywise change the standard of review in a criminal case by this court which remains as stated in *Harris v. State*, Wyo.1971, 487 P.2d 800, 801. This court will 'view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict.' "

Also see *Bentley v. State*, Wyo., 502 P.2d 203, 208. We find little help from appellant's brief and argument on this point, which seem directly aimed not at the sufficiency, but the weight, to be given the evidence, and apparently would deny the jury the right to draw inferences from these facts. Appellant only concludes that because of the failure to "*directly* link the appellant to any of the instrumentalities or facts of the robbery," the State has not proven a prima facie case.

Even though none of the circumstances standing alone might be sufficient to support a conviction, it has been said:

"* * * * The nature of circumstantial evidence implies the weaving of a fabric of known facts, which may be inconsequential alone, but become important when they are tied to other facts which lead to inevitable conclusions as to facts in issue. * * * " *Mathis v. People*, 167 Colo. 504, 448 P.2d 633, 637.

Identification of an accused, therefore, need not be positive in order to obtain a conviction. The witness need only testify that it is his belief, opinion or judgment that the accused committed the crime. The lack of positiveness goes only to the weight of his testimony, *State v. Williamson*, 78 N.M. 751, 438 P.2d 161, 164, certiorari denied 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170; cf, *Boyd v. State*, Wyo., 528 P.2d 287, certiorari denied 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102.

The general rule with regard to establishing an accused's identity is stated in 77 C.J.S. Robbery § 47, p. 508:

"* * * * Where the sum total of circumstantial evidence is sufficient, accused may be identified by his voice, or particular manner of talking, or by tracks, or footprints, or *by any distinctive features of his person or apparel, or by any other evidence of a purely circumstantial character.* * * * " (Emphasis supplied.)

In particular, a defendant may be properly identified by a witness's recognition of his height and weight, size, movements, features, mannerisms and the clothing he was wearing at the scene of the crime, *State v. Williamson*, supra, 438 P.2d at 163; *Mathis v. People*, supra; *People v. Susanec*, 398 Ill. 507, 76 N.E.2d 33, 36; *State v. Scobee*, 331 Mo. 217, 53 S.W.2d 245, 251; *Bennett v. State*, Okl.Crim., 546 P.2d 659, 663; *State v. Carcerano*, 238 Or. 208, 390 P.2d 923, 927, certiorari denied 380 U.S. 923, 85 S.Ct. 921, 13 L.Ed.2d 807; *Comer v. Commonwealth*, 211 Va. 246, 176 S.E.2d 432, 434. See also, 1 Wharton's Criminal Evidence, § 188, p. 372 (C.E. Torcia 13th Ed.).

■ It is also appropriate to note that a weapon identified as similar to or bearing a sufficient resemblance to the one used by the defendant in the commission of the criminal act is admissible in evidence, *Davidson v. State*, Okl.Cr., 550 P.2d 974, 977; *Cokley v. People*, 168 Colo. 52, 449 P.2d 824, 827; *Stalley v. State*, 91 Nev. 671, 541 P.2d 658, 661. This evidence is relevant to show availability to the defendant of the means to commit the crime in conformity with the charges filed against him, *Davidson v. State*, supra; *Stalley v. State*, supra; 22A C.J.S. Criminal Law § 712, p. 956.

■ We conclude from a consideration of the evidence in this record that it was proper to allow the case to go to the jury and we will not substitute our judgment for that of the jury as fact finders, *Lewallen v. State*, Wyo., 536 P.2d 148, 150; *State v. Koch*, 64 Wyo. 175, 189 P.2d 162, 169–170.

## ILLEGAL SEARCH AND SEIZURE

■ Although in this case no motion to suppress any of these exhibits was made prior to trial, under Rule 40(e)(1), W.R. Cr.P., nor was any objection made upon this basis to the admission of this evidence at the trial, appellant now contends that the court upon its own motion should have inquired of the witnesses and then suppressed Exhibits 1, 3, and 4; [1] and that the failure to do so constituted plain error as contemplated by Rule 49(b), W.R.Cr.P. No explanation is tendered by appellant for the failure to raise this.

The general rule is as follows:

" * * * It ordinarily cannot be claimed on appeal that a search and seizure were illegal if there was neither a motion to suppress nor an objection to introduction of the evidence at the trial. * * * " 3 Wright, Federal Practice and Procedure, § 678, pp. 141–142.

In this connection see *Sykes v. United States*, 5 Cir., 373 F.2d 607, 612, certiorari denied 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138; *United States v. Meadows*, 5 Cir., 523 F.2d 365, 368, certiorari denied 424 U.S. 970, 96 S.Ct. 1469, 47 L.Ed.2d 738; *Williams v. United States*, 10 Cir., 323 F.2d 90, 94, certiorari denied 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605; *Bouchard v. United States*, 9 Cir., 344 F.2d 872, 875; *Matthews v. United States*, 5 Cir., 407 F.2d 1371, 1382, certiorari denied 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554.

■ Although each case involving a claim of clear error must be decided upon its individual facts, such finding must be applied with caution, and even claims of error of constitutional dimension do not invoke this rule, *Hays v. State*, Wyo., 522 P.2d 1004, 1007; *Hampton v. State*, Wyo., 558 P.2d 504, 507–508. Appellant further has a definite burden to "demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way," *Hampton v. State*, supra, 558 P.2d at 507.

■ The record is silent as to the facts upon which this court could determine the reasonableness of the searches and seizures. Thus appellant has not satisfied this burden, and particularly he has not demonstrated the "particular facts" necessary, *Hampton v. State*, supra.

■ We can see no reason why the prosecution should now be penalized for its failure to introduce evidence which might be the basis of these searches and seizures when the defendant did not raise this question, which made such showing unnecessary, *United States v. Meadows*, supra. A clear expression of the reason for the caution in applying this doctrine would be that which appears in *United States v. Smith*, 160 U.S.App.D.C. 221, 490 F.2d 789, 794–795:

" * * * The rule requiring objection at trial is not lightly to be set aside and thus permit a defendant to let in evidence at trial as a hedge to insure reversal on an appeal if his client is convicted."

Because of the factual distinctions, it would be improper to base our disposal hereof upon *Blakely*, supra. However, the author-

---

1. Exhibit 1 is the stocking; Exhibit 3, the pistol; and Exhibit 4, the currency.

ities cited and the discussion appearing 542 P.2d on page 860 thereof could be utilized as sufficient authority for this disposal; and it is to be noted in that case that the defendant Blakely had taken affirmative action to raise this question, unlike Johnson. This case also expresses a concept applicable here when it is said:

"* * * defendant has the duty to protect himself and he should not be allowed to make his own rules of procedure."

Additionally, because of the posture in which this appellant presents this proposition, we believe it proper to repeat the following:

"* * * We cannot allow defendant or his counsel to place the burden of the defense upon a trial judge." *Gallup v. State*, Wyo., 559 P.2d 1024, 1026.

Nor is it proper that this court be forced to assume that burden.

## VIOLATION OF FIFTH AMENDMENT RIGHTS

▮ We are next faced with a claim that it was prejudicial error for the prosecuting attorney to elicit from two police officers the fact that defendant was advised of his constitutional rights under the Fifth Amendment to the United States Constitution because no confession was ever offered in evidence. In addition to his categorical assertion that this was "an indirect mention" and a comment upon defendant's failure to make an exculpatory statement, he relies without further argument upon *Jerskey v. State*, Wyo., 546 P.2d 173, and the authorities therein cited, without any attempt at demonstrating its applicability. Inasmuch as that case involves an examination of police officers with direct statements from them that Jerskey had no comment or reply, we are unable to see how it can be applied to this case. Nor are we able to conclude logically that this was or is a comment upon the failure to make such statement. There being no authority which we deem applicable, or cogent argument, we will not further consider this question, *Alcala v. State*, Wyo., 487 P.2d 448, 456,

certiorari denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, rehearing denied 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823; *Connor v. State*, Wyo., 537 P.2d 715, 719.

## INEFFECTIVE COUNSEL

▮ Appellant's counsel has also presented to us the contention that appellant did not receive effective assistance of counsel in violation of his Sixth Amendment right, and he makes it clear that this is raised solely at his client's insistence. This claim of ineffective counsel is based upon five elements as set out by appellant:

"1. Counsel 'let the Judge and D.A. have an illegal line up at my Trial.'

"2. Counsel 'let the police change their description so that the description would fit me.'

"3. Counsel 'wouldn't let me use my witnesses because I had not been identified.'

"4. Counsel 'wouldn't let me get on the stand because I had not been identified.'

"5. Counsel did not appeal Appellant's binding over on probable cause from Justice of the Peace Court."

In light of the fact that there was no line-up identification offered or referred to in the trial and the fact that no lawyer would have any control over the testimony of witnesses, particularly those adverse to him, the first and second propositions asserted are on their face of such frivolous character as to make any serious discussion thereof a mere pandering to the defendant's paranoia.

▮ In his fifth item appellant seems to suggest by his aliunde statements that inasmuch as his trial counsel promised to seek a remand to the justice court after the preliminary hearing, there was no probable cause to bind him over to stand trial on the armed robbery charge. This claim, however, rests on facts not of record, and we cannot consider it on appeal, *Elmer v. State*, Wyo., 466 P.2d 375, 376, certiorari denied 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82; *State v. Jackson*, 75 Wyo. 13, 291 P.2d 798, 800.

██ The third suggested basis for appellant's ineffective counsel claim is answered by the recent cause of *Gallup v. State*, supra, wherein we said that defense counsel is governed by the wishes and commands of his client only when faced with decisions relating to whether the defendant should plead guilty, waive a jury trial, or testify in his own behalf. All other areas, including the decision whether to call or not call a witness, are in the control of the defendant's counsel, who is the master of the proceedings.

 Although counsel representing a criminal defendant has the power to control the proceedings, that power may not be exercised to deprive his client of the right to take the stand and testify, *Gallup v. State*, supra. We nevertheless find the fourth proposition asserted by appellant to have no merit under the circumstances of this case.

There is no contention that either appellant or his attorney made a request to the trial court that the former be allowed to testify. Appellant cannot now be heard to say that he did not know of his right to testify. At the time of his arraignment he was advised by the trial judge that he could testify, but that he should do so only after consultation with his attorney. The judge further advised him of the serious implications which could arise from being subjected to cross-examination. Appellant then responded to the inquiry of the judge by stating that he had no questions and understood his rights. Appellant did not advise the trial judge of his desire to testify during the trial, or at the time of sentencing when he was asked on allocution whether there was any reason sentence should not be passed. Thus, there is nothing in the record to show that appellant did not acquiesce in his counsel's decision to keep him off the stand until after the adverse verdict.

There are several instances where it could be highly detrimental for the defendant to take the witness stand, particularly where the manner and appearance of the defendant might be unfavorable, or where there exists a possibility of a damaging impeachment on cross-examination, especially in this case wherein the record shows appellant had two previous felony convictions. See *State v. Galbreath*, 97 Ariz. 361, 400 P.2d 842, 843; *People v. Solomon,* 24 Ill.2d 586, 182 N.E.2d 736, 738–739, certiorari denied 371 U.S. 853, 83 S.Ct. 94, 9 L.Ed.2d 87; *State v. Garrity*, 277 Minn. 111, 151 N.W.2d 773, 776; *State v. Moore*, Mo., 435 S.W.2d 8, 15. Counsel may also have felt an explanation of why appellant was hiding in the closet might not have been advantageous. When counsel is convinced that the State's case is not overwhelming, taken in connection with these other facts, good trial strategy strongly suggests that it would have been best to keep appellant from the witness stand.

 While the right to testify ultimately rests with the defendant, it is still to be regarded as a trial tactic, *United States v. Garguilo*, 2 Cir., 324 F.2d 795, 797; *State v. Galbreath*, supra; *Jones v. State*, 224 Ark. 134, 273 S.W.2d 534, 535; *People v. Solomon*, supra; *Commonwealth v. Bernier*, 359 Mass. 13, 267 N.E.2d 636, 642; *State v. Garrity*, supra; *State v. Moore*, supra. There is a presumption that counsel was competent and performed his duty, *Slawek v. United States*, 8 Cir., 413 F.2d 957, 959; *United States v. Kelton*, 8 Cir., 518 F.2d 531, 533–534, certiorari denied 423 U.S. 1021, 96 S.Ct. 460, 46 L.Ed.2d 394; and because of this presumption a heavy burden rests on the one asserting ineffective assistance of counsel, *United States v. Kelton*, supra. *United States v. Meek*, 7 Cir., 388 F.2d 936, 940, certiorari denied 391 U.S. 951, 88 S.Ct. 1855, 20 L.Ed.2d 866, holds that it must be assumed that defense counsel acted in the best interests of his client, and that unless there is a clear showing that this is not the case, the defendant is bound by his attorney's conduct of the defense. This would lead us to presume without some contradiction that appellant's counsel fully and fairly performed his professional duty and advised appellant of the possible consequences of his appearance on the stand. If

we were to reverse this case without any factual showing of appellant's desire at the time of the trial to take the stand or the refusal of his counsel to call him, we would insure that this contention would be raised in all cases resulting in conviction, and where the defendant had not chosen to testify.

We have carefully scrutinized the record and conclude that appellant's counsel at the trial gave him an effective and competent defense. Appellant's claim of ineffective counsel is completely without merit.

The judgment is therefore affirmed.