**Ivan Joe TUCKER, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 5038.**

Supreme Court of Wyoming.

May 8, 1979.

Rehearing Denied June 12, 1979.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Patrick J. Murphy, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Leonard D. Munker, Asst. Atty. Gen., Cheyenne, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

1. This section, now 6–4–506(b), W.S.1977, as amended by Ch. 70, § 1, S.L. of Wyoming 1975, reads as follows:

McCLINTOCK, Justice.

Ivan Joe Tucker was arrested, charged and convicted of two counts of aggravated assault with a dangerous or deadly weapon in violation of § 6–70B, W.S.1957, 1975 Cum.Supp.,[1] as a result of a shooting incident that occurred in an alleyway behind the Mint Bar in Sheridan on the evening of November 11, 1977. Tucker raises two issues by his appeal but we believe the substance of the two questions is whether there is sufficient evidence of eyewitness identification of Tucker as the person who committed the crime charged to sustain the conviction. We affirm.

On the evening of November 11 Tucker was playing pool in the Mint Bar in Sheridan. According to the testimony at trial he was bantering with others in attendance and, as one witness described his behavior, was rather obnoxious. He was playing pool with at least three other individuals. These individuals and other witnesses in the bar testified at trial and gave a general description of his physical characteristics and dress. In particular, the witnesses noted his cowboy hat, a low-crowned, or flat-topped, black hat that several people described as a cheap "dude hat." His facial features, including his beard and mustache, were also singled out for identification. He was described as a "flashy" dresser wearing shiny, red leather boots, brown pants and a light brown turtleneck with two chains or necklaces visible over the shirt. A distinctive belt buckle was also noted. Tucker was clearly identified by seven witnesses as being at the Mint Bar, and playing pool in the back portion of the building on the night in question, although Tucker denied having been present.

"Whoever, while armed with a dangerous or deadly weapon, including an unloaded firearm, maliciously perpetrates an assault or assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

Sometime that evening, William George Benedict came into the bar apparently looking for a friend. Steven Cleo Kobold, an acquaintance, was already there and playing pool. Benedict noticed Tucker, but the two had no apparent conversations or disagreement. After a short time, at about 10:30 p. m., Tucker was seen leaving by the rear door of the bar. Within one or two minutes Benedict left by the same door.

Benedict testified at trial that he stepped into the alley, down the stairs, and was walking toward the east. At that moment someone said, "Hold it right there." He spun around and saw a man in a black cowboy hat extend his arms forward towards him and heard the report of what he described as a small caliber handgun. He did not, however, see the weapon. Instantly he ran for the doorway, about five or six steps away. He pushed the door open and there was met by Kobold who had stepped into the doorway. Kobold pulled Benedict into the bar. Benedict testified that he had a good view of the shooter for the light in the alley, although artificial, was good. Based upon his view of Tucker in the bar and his view in the alley, he testified that he was satisfied but not "positive" Tucker was the man who shot him. He clearly recognized the hat and the facial hair. Benedict apparently was hit in the abdomen by a single round from a small caliber weapon but the bullet was never recovered.

Kobold was at the bar that night playing pool. He recognized Tucker as being present and in fact played pool with or against him. He saw Tucker leave by the back door moments before Benedict also left. He heard one shot and moved toward the door in time to pull Benedict into the bar. At that time he had one foot outside the building, on the step of the exit, and one foot inside. He was then facing west and saw the man shoot at him with what he believed to be a small-caliber handgun. He testified the man fired twice, once at Benedict and once at him. He testified he recognized the man as Tucker because of his "scraggly little beard," mustache and distinctive cowboy hat. He believed a handgun was used because the man extended his arm before firing. The lighting was sufficient for the identification for there was a street lamp on the east end of the alley and the sign for the Mint Bar at the west end, both of which reflected light on the man. On cross-examination Kobold felt he could not be positive the man was Tucker but he believed it was. Both Kobold and Benedict had ample opportunity to see Tucker in the Mint Bar just minutes before the shooting. Kobold then reentered the bar where Benedict was being aided.

Based on information received by them, Sheridan police officers went to Tucker's home in Sheridan on January 13, 1978 and arrested Tucker. In addition, armed with a search warrant, the police recovered a .22 caliber handgun, a pair of boots, pants, turtleneck and belt buckle roughly matching the dress of Tucker as described in the bar by witnesses. On November 12 a black, low-crowned cowboy hat, matching the description of the one worn by Tucker the night before, was found near the loading dock of a local Sheridan business.

At trial, in addition to the testimony of the witnesses, several items of demonstrative evidence were introduced, including the clothing mentioned. The .22 caliber handgun recovered from Tucker's residence was offered into evidence but not received as it was never identified as the weapon. The witnesses could not state it was the gun used in the crime. No ballistic tests were performed on the weapon in an effort to identify it, for no expended bullets were recovered. The witnesses all agree that at least two shots were fired at Benedict and Kobold although several state they believe they heard as many as three or four reports. Hair samples were taken from Tucker and from the hat found by the loading dock. At trial the chief forensic scientist and the Director of the Wyoming State Crime Laboratory testified to an analysis made by him that convinced him the hair was from a "common source" and possessed "hair characteristics" that were identical. He could not be absolutely certain of the origin, but he believed that no more than ten percent of the general population in Wyoming had

such characteristics. Tucker acted as his own attorney at trial, thus giving the witnesses in the case additional opportunity to view his general physical characteristics and mannerisms.

The case of *Johnson v. State*, Wyo., 562 P.2d 1294 (1977) is persuasive authority in the resolution of this appeal. We there repeated the traditional rule on appeal that in passing upon the sufficiency of evidence to support a jury verdict of guilty we must review the evidence in a light most favorable to the State, together with the reasonable inferences that may be drawn from that evidence, whether direct or circumstantial, or both. *Blakely v. State*, Wyo., 542 P.2d 857 (1975). That rule requires affirmance of the conviction.

*Johnson* involved the issue of sufficiency of identification evidence required to sustain the conviction on charges of aggravated robbery. We noted that a defendant may be properly identified by his or her height, weight, size, movements, features, mannerisms, clothing, and such. Tucker was identified on just such a basis. Both Benedict and Kobold testified they recognized Tucker by his hat, facial hair and features. They had an opportunity to see Tucker in the bar and, even if for a moment, in the alley because of the good light conditions. Both were convinced Tucker was the man who fired the shots. The evidence is overwhelming that Tucker was in the Mint Bar that night despite his denial. This sequence of events, taken together with the hair analysis, circumstantially corroborates the contentions of the State. As Chief Justice Guthrie noted in *Johnson*, 562 P.2d at 1297:

"Identification of an accused, therefore, need not be positive in order to obtain a conviction. The witness need only testify that it is his belief, opinion or judgment that the accused committed the crime. The lack of positiveness goes only to the weight of his testimony."

Here, as in *Johnson*, we believe questions of credibility and of the weight to be given offered evidence is presented, but not of sufficiency, for there is credible evidence in the record on what we believe to be the sole issue on appeal, whether the defendant committed the crimes charged. It is settled beyond the need for citation that such considerations are for the jury and not this court.

We also note that question was raised at argument about the strength of the *Blakely* rule on circumstantial evidence. *Blakely v. State*, supra; *Mulligan v. State*, Wyo., 513 P.2d 180 (1973). *Blakely* overruled *Mulligan* to the extent necessary for the adoption of the rule in this state that circumstantial evidence is to be considered and weighed by the jury on the same basis as direct evidence. *Blakely v. State*, supra; *Jones v. State*, Wyo., 568 P.2d 837 (1977). In this case both direct and circumstantial evidence were involved. The testimony of Benedict and Kobold that Tucker was the assailant was direct evidence of identification. The other evidence, such as the analysis of the hair sample, was circumstantial, but it could reasonably be found to support the conviction.

Affirmed.