Opinion by
Mr. Justice Lee.
This writ of error is brought to review the conviction of plaintiffs in error for larceny and conspiracy to commit larceny on jury verdicts in the Boulder County District Court. We refer to plaintiffs in error herein by their names or as defendants.
Inasmuch as the convictions were based on circumstantial evidence, it is necessary to detail the facts as shown by the record of evidence presented at trial.
Richard David Drahn and Bruce Basil McDowell were senior students at the University of Colorado. Both had scholarships. Both were members of the varsity wrestling team. Drahn had injured his left shoulder and on the day of the events hereinafter related was wearing a tight sling which suspended and covered his entire left arm. He wore a heavy-weight wool shirt. McDowell was wearing a ski parka.
*159 On the morning of February 20, 1967, Kenneth Raper, the prosecutor’s chief witness, was in the discount store in Boulder operated by Gibson Products Company, Inc. Raper was in the sporting goods department in the rear of the store inspecting a Redfield telescopic gunsight (scope). He did not purchase it and the clerk returned it to its box and placed the box in the unlocked display case.
McDowell and Drahn, who that morning had been engaged in loading shells at McDowell’s home prepatory to a hunting trip, ran out of bullets. After lunch on their way to wrestling practice they stopped at Gibson’s to purchase the needed bullets. They proceeded to the gun section of the sporting goods department, where they waited for a sales clerk. None appeared and Drahn wandered into the automotive department, eventually returning to the sporting goods department. During this interim McDowell had been looking at various articles of merchandise on the counter.
By coincidence Kenneth Raper had returned to Gibson’s and was also in the sporting goods department, also intent on purchasing ammunition, and also waiting for a sales clerk. He was at the next counter over from where McDowell was waiting. At approximately the same time Drahn returned to where McDowell was standing, Raper testified that he noticed McDowell had the scope in his left hand. McDowell stepped towards Raper and according to Raper inquired “if they had to pay for the scope here, or could they go up front?” Raper replied “they could go up front and pay for it since the clerk was not there at the time.” Raper testified McDowell and Drahn turned and started walking up the aisle, McDowell holding the scope in his left hand. Raper then related that at the time McDowell and Drahn turned and started toward the aisle his attention was diverted to an employee and friend of his by the name of Van Teager who had been stocking the shelves. Raper stated to Teager: “You just missed a $70 sale. There’s two boys going up front to pay *160 for a scope.” Roper and Teager turned toward the aisle and observed McDowell and Drahn about three-fourths of the way up the aisle walking towards the checkstands area. Both Raper and Teager admitted they could not see McDowell or Drahn carrying the scope or the box as they proceeded up the aisle.
McDowell and Drahn proceeded through an unmanned check-stand to the exit and outside the store. Teager then pursued them, stopping them a few feet from the doors. He asked them if they had taken the scope, to which they replied they had not. He watched them as they got into McDowell’s jeep and drove away.
Teager testified he did not at any time see the scope or box on the persons of either McDowell or Drahn as they walked up the aisle or as he confronted them outside the store.
Upon returning to the store, Teager and other employees searched for the scope, which was never located.
On cross-examination, Raper clarified his testimony to the effect that what he saw in McDowell’s left hand was not actually the scope but rather the scope box. The prosecution had marked as exhibit A, a scope similar to' that which was missing from the store, and as exhibit B the box in which the scope was contained. These, of course, were both viewed by the jury; only the scope was offered and admitted into evidence. Both have been transmitted here as a part of the record. The scope measures 12% inches long and 2 inches in diameter. The scope box measures 13% inches long by 2% inches square.
Later that day, in the early evening, McDowell and Drahn returned to Gibson’s to talk with Teager. McDowell stated to him: “Would we have come back if we had stolen a scope?” To which Teager replied: “This is just a way of proving to us that you didn’t take it but you still might have.”
The foregoing summary was the entire case of the People. Defendants’ motion for acquittal was denied. Both defendants testified, and consistently denied the *161 accusations at all stages of the investigation and in court.
McDowell admitted having the scope box in his hand. However, his version of the brief conversation with Raper was significantly different from Raper’s. He testified he asked Raper: “Do you think we could pay for something up front if we took it from back here (referring to bullets)?” To which Raper replied: “I don’t know.” McDowell then turned around back toward the aisle, placed the box on the counter and suggested to Drahn: “I think maybe we better get to wrestling practice.” They then commenced walking up the aisle toward the front of the store.
Three character witnesses testified to the good character of the defendants. Both McDowell and Drahn readily consented to a search of their respective homes by police officers. The scope was not found.
At the conclusion of all of the evidence, defendants again moved for judgment of acquittal which the court denied.
The jury received the case at 3:33 p.m. on August 25, 1967, and the following events occurred during its deliberation. At 4:23 p.m. the jury requested a copy of Raper’s testimony. The court denied this request. At 7:10 p.m. the jury requested the answers to two written questions concerning the testimony. Defendants had suggested that the entire testimony of the witness Raper be read to the jury. However, over objection of defendants, the court attempted to submit only portions of the testimony on direct examination in answer to these questions propounded by the jury, and none of the testimony on cross-examination.
At 9:23 p.m. the jury submitted a further question to the court: “In the instructions it says guilty beyond a reasonable doubt. Does this mean guilty on circumstantial evidence alone?” The court had initially failed to instruct on circumstantial evidence. Defendants objected to such instruction after the jury had been deliberating over five hours. However, the court nevertheless instructed *162 the jury on circumstantial evidence. Moreover, the instruction failed to include the essential limiting language that in order to convict on circumstantial evidence alone, circumstances must be such as to exclude every reasonable hypothesis of defendants’ innocence.
The next day on August 26, 1967, at 10:55 a.m., after approximately 19 hours of deliberation, the jury was brought into the courtroom where the court was informed the jury was deadlocked. The court over objection of defendants gave the so-called Allen charge.
Later, at 1:00 p.m., 22 hours after the jury received the case, the court in response to a request from the jury, and again over defendants’ objection, had the reporter read to the jury the entire testimony of the witness Raper.
At 2:50 p.m., approximately 23 hours after receiving the case, the jury returned its verdict of guilty as to larceny only, failing to find as to conspiracy; whereupon the court returned the jury to deliberate on conspiracy. The jury returned guilty verdicts as to conspiracy at 3:57 p.m., some 24 hours after receiving the case.
The foregoing tedious recitation of the problems presented by this case amply demonstrates what we consider to be a forced verdict based upon circumstantial evidence insufficient in quantity and quality to support a verdict of guilty. Even had the jury been initially properly instructed on circumstantial evidence, we suggest that every reasonable hypothesis of innocence was not eliminated by the People’s evidence. For example, it was never in any way demonstrated that the scope which had been returned to the unlocked showcase after Raper’s initial inspection at 11 a.m. that morning was in the showcase or on the counter in the box 2% hours later at the time McDowell picked up the box. McDowell testified he replaced the box on the counter after he turned from Raper and proceeded down the aisle, and this was never rebutted by any testimony that the box was not on the counter as he had stated. Raper did not *163 proceed out of the store in pursuit of the defendants as did Teager, but remained behind at the counter. The evidence of the later search did not foreclose the prior opportunity available to other persons during this interval of time to remove the scope if it was indeed replaced on the counter by McDowell (assuming first of all it was indeed in the box he handled, which was in no manner demonstrated). The only evidence upon which the jury could base its guilty verdicts was that McDowell at some time had in his hand the scope box, as distinguished from the scope, bolstered by surmise, speculation and conjecture. Such does not equate with proof beyond a reasonable doubt, which is the state’s burden in every criminal case. Ziatz v. People, 171 Colo. 58, 465 P.2d 406; Maynes v. People, 169 Colo. 186, 454 P.2d 797.
“Viewed in its entirety the evidence relied upon by the People is insufficient both in quality and quantity to support the verdict of the jury. It is unconvincing, leaves too much to speculation and conjecture, and is equally consistent with an hypothesis of innocence as with that of guilt. True, one possessed of only normal curiosity might be suspicious and surmise that Stevenson had something to do with the Homedew burglary, but mere suspicions, however strong, have not yet been accepted in lieu of proof beyond a reasonable doubt. Van Straaten v. People, 26 Colo. 184, 56 P. 905; Lombardi v. People, 124 Colo. 284, 236 P.2d 113; Goodell v. People, 137 Colo. 507, 327 P.2d 279; and Stull v. People, 140 Colo. 278, 344 P.2d 455.” Stevenson v. People, 148 Colo. 538, 367 P.2d 339. The court erred in failing to grant defendants’ motions for judgment of acquittal.
In view of our conclusions concerning the failure of the People to sustain the burden of proof beyond a reasonable doubt, we need not comment on the numerous other assignments of error which relate in the main to procedural problems connected with instructions to the jury during its deliberation.
*164 The judgments of conviction are reversed and the defendants discharged.
Mr. Chief Justice Pringle, Mr. Justice Hodges and Mr. Justice Kelley concur.