23CA0624 Peo v Gonzalez-Pacheco 11-07-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0624
Adams County District Court No. 21CR2791
Honorable Sharon Holbrook, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jesse Gonzalez-Pacheco,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE SULLIVAN
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Taylor Ivy, Denver, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Jesse Gonzalez-Pacheco, appeals the judgment of conviction entered on a jury verdict finding him guilty of theft. We affirm.

## I.     Background

¶ 2     A jury could have reasonably found the following facts.

¶ 3     In February 2021, Bryce Kelley, the president and CEO of Ritchey Livestock ID (Ritchey), a company that made livestock identification tags, hired Gonzalez-Pacheco as the company's plant manager. During Gonzalez-Pacheco's employment, a combination of COVID-19 supply chain challenges, staffing issues, Gonzalez-Pacheco's belief he was being overworked, and differing perceptions regarding Ritchey's management led to the deterioration of Kelley and Gonzalez-Pacheco's working relationship.

¶ 4     During the early morning hours of August 28, 2021, Kelley received an alert on his phone that someone had moved inside Ritchey's facility and activated its security cameras. Kelley could see on his phone that Gonzalez-Pacheco had triggered the cameras' motion detectors. The cameras showed Gonzalez-Pacheco holding the faceplate of the extruder die machine (the faceplate), a central component of Ritchey's business. The cameras also depicted

1

Gonzalez-Pacheco turning one of the cameras toward a wall to obscure its view, prompting Kelley to drive to the facility and confront Gonzalez-Pacheco.

¶ 5      After arriving at the facility, Kelley fired Gonzalez-Pacheco but allowed him to gather his belongings before he left.  A few hours after Gonzalez-Pacheco left, Kelley realized that the faceplate was missing.  Unable to locate it after a brief search, Kelley reported to law enforcement that Gonzalez-Pacheco had stolen the faceplate.  Law enforcement contacted Gonzalez-Pacheco two days later but never recovered the faceplate.

¶ 6      The prosecution charged Gonzalez-Pacheco with theft of a thing of value worth five thousand dollars or more but less than twenty thousand dollars, a class 5 felony.  § 18-4-401(1), (2)(g), C.R.S. 2024.  A jury found Gonzalez-Pacheco guilty as charged.

¶ 7      Gonzalez-Pacheco contends on appeal that insufficient evidence supports his theft conviction because (1) the prosecution failed to prove that he knowingly obtained, retained, or exercised control over the faceplate with the intent to deprive Ritchey permanently of its use or benefit; and (2) the prosecution failed to

2

prove the faceplate's value. We disagree with these contentions and affirm.

## II. Sufficiency of the Evidence

¶ 8 "When a defendant challenges the sufficiency of the evidence, '[w]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction.'" *Johnson v. People*, 2023 CO 7, ¶ 13 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)). We use the "substantial evidence test," under which we consider whether the relevant evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* Under this test, relevant evidence can be both direct and circumstantial evidence. *McCoy v. People*, 2019 CO 44, ¶ 63.

¶ 9 "[A] mere modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt," and the jury may not base its verdict on "guessing, speculation, or conjecture." *People v. Johnson*, 2016 COA 15, ¶ 16 (quoting *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999)). But we draw all reasonable

inferences in the prosecution's favor. *People v. Wilson*, 2017 COA 89, ¶ 3.

## A. Evidence of Theft

¶ 10    We first address Gonzalez-Pacheco's contention that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he knowingly obtained, retained, or exercised control over the faceplate with the intent to deprive Ritchey permanently of its use or benefit.

¶ 11    To convict Gonzalez-Pacheco of the theft charge, the jury had to find beyond a reasonable doubt that he (1) knowingly; (2) obtained, retained, or exercised control over the faceplate without authorization or by threat or deception; and (3) intended to deprive Ritchey permanently of the use or benefit of the faceplate. § 18-4-401(1)(a).  The jury also needed to find beyond a reasonable doubt that the faceplate's value was five thousand dollars or more. § 18-4-401(2)(g).

¶ 12    The court correctly instructed the jury that a person acts "knowingly" (1) with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such a circumstance exists and

(2) with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result. *See* § 18-1-501(6), C.R.S. 2024.

¶ 13    The following relevant evidence was presented at trial:

(1)    Gonzalez-Pacheco testified that he was under immense pressure from Kelley during August 2021 to rapidly produce identification tags, leading to hostility and tension between them.

(2)    Gonzalez-Pacheco testified he had worked with an extruder for about seven to eight years before he was hired at Ritchey, and that he knew the extruder "like the back of [his] hand."

(3)    Kelley testified that, on August 28, 2021, security cameras he installed at Ritchey alerted him that Gonzalez-Pacheco was moving inside of the facility.

(4)    Kelley testified that, when he checked the video on his phone, Gonzalez-Pacheco had turned one of cameras towards the wall, obscuring its view.

(5)    Surveillance video showed that Gonzalez-Pacheco handled the faceplate in the facility before Kelley arrived,

5

walking with it toward his office just hours before Kelley reported the faceplate as stolen.

(6) Gonzalez-Pacheco testified that he had previously undergone surgery on his left shoulder, saying that he "can use [his] right hand but not [his] left." Despite this, surveillance video showed Gonzalez-Pacheco carrying the faceplate solely in his left hand.

(7) Kelley testified that he fired Gonzalez-Pacheco when he arrived at Ritchey, and then allowed Gonzalez-Pacheco to pack up his belongings.

(8) Kelly testified that he gave Gonzalez-Pacheco space while he packed his belongings, standing on the other side of the facility where he couldn't see what Gonzalez-Pacheco was packing.

(9) A detective who reviewed the camera footage testified that Gonzalez-Pacheco used at least two receptacles — a white box and black pack — to carry out his belongings after being fired. Both were large enough to conceal the faceplate.

(10) Neither Kelley nor any Ritchey employee ever found the faceplate.

¶ 14 Viewing this direct and circumstantial evidence in the light most favorable to the prosecution, a juror could reasonably draw the inference that Gonzalez-Pacheco, resentful of Kelley's high-pressure management style and angered after being fired, knowingly retained the faceplate without authorization, snuck the faceplate out of Ritchey's facility in one of the receptacles that he used to carry out his belongings, and didn't return the faceplate or disclose its location because he intended to deprive Ritchey permanently of its use or benefit.

¶ 15 While Gonzalez-Pacheco presented evidence that could have allowed the jury to reach the opposite conclusion, the task of resolving conflicts or inconsistencies in the evidence fell to the jury. *See People v. Plancarte*, 232 P.3d 186, 192 (Colo. App. 2009) ("It is the jury's function to consider and determine what weight shall be given to the evidence, which includes resolving conflicts, inconsistencies, and disputes in the evidence.").

¶ 16     We disagree with Gonzalez-Pacheco that this case is akin to either *Drahn v. People*, 483 P.2d 209 (Colo. 1971), or *People v. Triggs*, 547 P.2d 1282 (Colo. 1976).

¶ 17     In *Drahn,* our supreme court applied the "reasonable hypothesis of innocence" test, requiring the prosecution to eliminate every reasonable hypothesis of innocence to sustain the defendant's conviction.  483 P.2d at 211-12.  But the supreme court has since discarded that test.  *See People v. Bennett,* 515 P.2d 466, 469 (Colo. 1973) ("[W]e now cast aside as outmoded and as confusing the requirement that the prosecution's evidence, when wholly circumstantial, must exclude every reasonable hypotheses other than that of guilt and no longer require such an instruction or such a test to be applied.").  As noted above, we now apply a substantial evidence test to determine whether the direct and circumstantial evidence, viewed in the light most favorable to the prosecution, is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.*  The prosecution's evidence here amply satisfies this test.

¶ 18    *Triggs* is also unhelpful to Gonzalez-Pacheco.  In *Triggs*, the only evidence implicating the defendant in the theft of a television set was a neighbor's testimony that the defendant "was seen holding an object [that] looked like a television set" and evidence that a television was "among the items taken" from a nearby residence.  547 P.2d at 1283.  Such thin evidence, the supreme court concluded, was "wholly insufficient both in quality and quantity to support" the guilty verdict.  *Id.*

¶ 19    But in this case, unlike in *Triggs*, video footage shows Gonzalez-Pacheco holding the faceplate shortly before Kelley reported it stolen.  Video footage also shows Gonzalez-Pacheco leaving Ritchey's facility with multiple receptacles that could have contained the faceplate.  When coupled with the evidence of the bad blood between Gonzalez-Pacheco and Kelley, a juror could reasonably conclude that the prosecution proved beyond a reasonable doubt that Gonzalez-Pacheco knowingly retained the faceplate without authorization, while intending to deprive Ritchey permanently of its use or benefit.

## B. Faceplate Value

¶ 20　Gonzalez-Pacheco also contends that the prosecution presented insufficient evidence of the faceplate's value.

¶ 21　Because the prosecution charged Gonzalez-Pacheco with theft as a class 5 felony, the jury had to find beyond a reasonable doubt that the faceplate's value was "five thousand dollars or more . . . ." § 18-4-401(2)(g).

¶ 22　In the absence of evidence of an item's market value, a jury may consider other types of evidence when determining its value, such as "the purchase price, junk price, *replacement cost*, the use of the article and common knowledge." *Burns v. People*, 365 P.2d 698, 701 (Colo. 1961) (emphasis added); *see also United States v. Shugart*, 176 F.3d 1373, 1375 (11th Cir. 1999) ("Although fair market value will often be an accurate measure of the value of property, it will not always be so. Where actual cash value is difficult to ascertain — because an item is unique, or because there is not a broad and active market for it — replacement cost may be a better measure of value."); *People v. Knapp*, 2020 COA 107, ¶ 90 (court may award restitution based on "reasonable replacement

value," rather than fair market value, when the victim shows that an item isn't "readily replaceable at a fair market value cost").

¶ 23 The prosecution presented the testimony of two experts who explained that the faceplate was a unique item that couldn't be bought anywhere. Rather, the faceplate's design was "highly, highly custom." Kelley testified that having a replacement faceplate custom made cost him "roughly 9- to $10,000." The prosecution admitted into evidence invoices that corroborated this amount. As a result, the jury could have reasonably concluded that the prosecution proved beyond a reasonable doubt that the faceplate's value was at least five thousand dollars.

¶ 24 We aren't persuaded otherwise by Gonzalez-Pacheco's argument that the faceplate was over fifty years old and prone to leaks. Kelley testified that he acquired Ritchey after hiring a consultant who determined that the company was a "safe bet," in part, because the die extruder machine was in "good enough condition to keep going." The jury was free to credit Kelley's testimony over Gonzalez-Pacheco's conflicting evidence regarding the faceplate's condition. *See Plancarte*, 232 P.3d at 193.

¶ 25    Accordingly, we conclude that the evidence at trial, when viewed in the light most favorable to the prosecution, was sufficient to support the jury's verdict on Gonzalez-Pacheco's theft charge.

### III.    Disposition

¶ 26    We affirm the judgment.

JUDGE J. JONES and JUDGE LIPINSKY concur.